Charles B. Brasser, J.
On May 23, 1957 the April-May Monroe County Grand Jury returned a report (sometimes termed a presentment) to me as the Presiding Justice at the May term of court. I ordered this report filed with the Monroe County Clerk and sealed until such time as an order was granted by a court of competent jurisdiction directing that it be unsealed.
The present motion is in the nature of a mandamus proceeding to compel the County Clerk of Monroe County to permit the inspection by the petitioner of the report. The County Clerk performs administrative functions solely and has no judicial authority. Obviously so long as the report remains sealed by order of this court, the County Clerk cannot permit the petitioner or anyone else to inspect the same.
Questions which come before the courts involving reports of Grand Juries most frequently arise on motions to expunge a report which has already been made public. Counsel have cited no case and I have found none involving a motion to inspect a report which has been ordered to be sealed. In order to pass upon a motion of this character it is, of course, necessary to consider the contents of the report.
The report of the Grand Jury in full reads as follows:
In the course of its work, this Grand Jury has become increasingly aware of its responsibilities and duties, not merely as the legal mechanism of the County for investigating criminal charges presented to it by the District Attorney’s Office, but also as the primary citizen’s body for investigating the conduct and operations of the city and county administration. As a result of our investigations, certain serious questions arose in this latter regard. This presentment is a report on the results of the Grand Jury’s attempts to answer these questions.
Several questions arose in connection with charges against Officer John Lipari. These were concerned, in particular, with the possibility that Lipari had accomplices within the Police Department and that there may have been a laxity of supervision from Lipari’s superiors which might have been partially *86 responsible for Lipari’s extra-legal activities. An independent investigation was therefore undertaken in an attempt to answer these questions. Chief of Police Winfield and Detective Captain Austin were interrogated and certain police department records were examined by the Grand Jury. This investigation was admittedly cursory, and our findings relied heavily on the honesty and integrity of these two men. It is 'the unanimous opinion of this Grand Jury that both Chief Winfield and Captain Austin have been acutely aware of the implications of the Lipari case, and that, as a result of their investigations within their departments, they found no evidence that Lipari had accomplices within the Police Force. This Grand Jury was satisfied that the investigations into this aspect of the Lipari ease have been and are being competently handled by Captain Austin and take this opportunity to commend him heartily.
In regard to the question of supervisory efficiency within the Police Department, we find no serious fault. We found that a patrolman, in the course of his duties on the beat, has considerable freedom in his activities. While abuse of this freedom can be prevented to a large extent by adequate and proper supervision, the fact that this freedom is occasionally misused, is not necessarily cause for criticism of the supervisory force. As in any organization, the proper functioning of the Police Department depends primarily on the caliber of its members and, in particular, on the honesty and integrity of the patrolmen at large in the city. It is the unanimous opinion of this Grand Jury, after interrogating Chief Winfield, that the supervisory organization of the Police Department is adequate. We note, however, the low salary scale of the policeman and suggest that this undoubtedly hinders recruitment of new officers. We would like to commend Chief Winfield and all the officers on the Force for their attitude and actions in connection with the Lipari case.
While this Grand Jury was in session, the local press carried a series of articles on the functions of the Grand Jury. The Grand Jury makes the following comments on certain aspects of this editorial series:
1. We take strong exception to statements by Justices O’Hara and Brasser to the effect that Grand Juries should commend, but not criticize the City and County administration. If the Grand Jury finds cause for criticism or censure, then it does so on the basis of the information obtained with the aid of the District Attorney. If the District Attorney and the responsible judge find that the Grand Jury’s criticism is unjustified, then it is up to them to pursue an investigation whose outcome will change the opinion of the Grand Jury. The Grand Jury’s right and duty to express its honest opinion must not be compromised and this Grand Jury demands to go on public record to this effect.
2. An inquisitive Grand Jury as opposed to a passive one, is a force for the good in the community. This force should be encouraged, especially by responsible jurists. This Grand Jury feels that the recent pronouncements by Justices O’Hara and Brasser tended to interfere with and influence its proper function.
3. This Grand Jury desires to charge succeeding Grand Juries to demand and use its rights as discussed above.
This Grand Jury wants to express its satisfaction with the way the District Attorney and his assistants have presented the various eases to it. We commend them heartily.
Dated: Hay 23, 1957.
The powers of a Grand Jury are clearly defined by statute. The Grand Jury has power, and it is their duty to inquire into all crimes committed or triable in the county, and to present them to the court. (Code Crim. Pro., § 245 [former § 252].)
*87 The Grand Jury must inquire,
1. Into the case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted; and
2. Into the willful and corrupt misconduct in office, of public officers of every description, in the county.
3. The Grand Jury may inquire into the condition and management of the public prisons in the county. (Code Grim. Pro., § 253 [former § 260].)
There is no statutory provision authorizing or empowering a Grand Jury to make reports or presentments of any nature. Under the power conferred upon a Grand Jury to inquire into the willful and corrupt misconduct in office of public officers, indictments should be returned where corrupt misconduct is found. It occurs not infrequently in the course of such an investigation that there is lacking sufficient evidence to return indictments. The question has arisen whether or not in such a situation a Grand Jury is empowered by implication to make a report calling attention to any inefficiency, carelessness or neglect requiring correction. The decisions are not in harmony on this subject. However, they are all in accord that this is the only possible circumstance under which a Grand Jury is authorized to make a report.
The only case involving this precise question, which has reached an Appellate Court in this State is Matter of Jones v. People (101 App. Div. 55) which was decided by the Appellate Divison, Second Department, in January, 1905. There the court affirmed by a divided court an order of the County Court of Nassau County denying a motion to quash a report or presentment made by a Grand Jury which censured the Board of Supervisors of Nassau County and two clerks of the board for the manner in which they performed their official duties. The divergent views on this subject are expressed in the prevailing and dissenting opinions in that case. Mr. Justice Jenks in the prevailing opinion stated the views of the majority of the court as follows (pp. 57-58): “Such inquiry as is required by sections 260 and 261 of the Code of Criminal Procedure may reveal misconduct, inattention or shortcomings of public officials, and the report or presentment might be colorless or ineffective unless it specified individual delinquencies. I think that in such a case the grand jury can properly point out those individuals who as officials are deemed responsible, and that the presentment may stand though it be not followed by an indictment.”
*88 The views of Mr. Justice Woodward, who wrote the dissenting opinion, are expressed in the following extracts from that opinion (pp. 60-61): It- cannot be that it was ever con-
templated that this body, created for the protection of the citizen, was to have the power to set up its own standards of public or private morals, and to arraign citizens at the bar of public opinion, without responsibility for its abuse of that power, and without giving to the citizen the right to a trial upon the accusations. * * * There are two great purposes, one to bring to trial those who are properly charged with crime, the other to protect the citizen against unfounded accusation of crime. When the grand jury goes beyond this and attempts to set up its own standards, and to administer punishment in the way of public censure, it is defeating the very purposes it was intended to conserve, and its action cannot, therefore, be lawful.”
The decision in the Jones case, although made by the Appellate Division in the Second Department, would not be binding-on the courts outside of that department. Even in that department the lower courts have not always seen fit to follow the decision in the Jones case. (People v. McCabe, 148 Misc. 330; Matter of Heffernan, 125 N. Y. S. 737.)
In fact, a substantial majority of decisions subsequent to the decision in the Jones case, including those of Justices in the Second Department, have been in agreement with the dissenting-opinion of Mr. Justice Woodward.
In Application of United Elec., Radio & Mach. Workers of America (111 F. Supp. 858) the United States District Court for the Southern District of New York, on April 13, 1953 granted a motion to expunge a report of a Federal Grand Jury. The opinion contains an exhaustive review of the authorities in this and other States and in the Federal courts, and concludes that the great weight of authority is that such reports exceed the power of a Grand Jury and may be expunged.
In a proceeding- in Queens County to set aside, quash and have stricken from the records a Grand Jury presentment with respect to misconduct of private persons, Judge Coldest said:
“ The history of our grand jury system is one of great nobility and of service, of protection to the humble from the unwarranted accusations of the great and mighty. For a thousand years it has been in the process of magnificent development — a shield to the innocent, a sword to the guilty.
" No king, no emperor, ever successfully controlled its determinations, and throughout the centuries it has protected the oppressed. In our State it holds a future of great useful *89 ness provided it keeps within the bounds of the statutes, the decisions of our courts and to its own fine traditions placed around its activities.
“ To single out an individual, not by reason of any acts in public office, not by reason of any acts as a public official, and to condemn him without a trial, without an opportunity to be heard, without the privilege of making a defense in a free American court of justice, to attempt to deprive him of his good name, to besmirch his character, is so unfair, so repugnant to the ideals of the administration of justice in America, as to merit the disapproval of this court.” (Matter of Healy, 161 Misc 582, 599.)
In February, 1929, a proceeding was begun in the Supreme Court, Schenectady County, to dismiss and quash a Grand Jury presentment charging the chief of police of the city of Schenectady with the responsibility for alleged lawless conditions existing in the city. In his decision, Mr. Justice Heeferhajs said: “ The grand jury is a constituent part of the court and is under its supervision and control. It can only act in the manner prescribed by law. The functions of the grand jury are of the highest importance in the due administration of justice. It should never be forgotten, however, that the establishment of this inquisitorial body was designed not only as a means of bringing to trial those accused of public offenses upon just grounds but had for its primary object the protection of the innocent against unfounded accusations from whatever source they might originate. The duties imposed by law upon a grand jury are of a dual character, one to society to see that persons justly suspected of crime are held to answer; the other to the citizen to see that he is not subjected to prosecution upon accusations based on envy, hatred, or malice. * * * From time immemorial it has been the practice of grand juries at the conclusion of their duties to adopt resolutions and make reports on a variety of subjects. So long as this worked no injustice, they were tolerated. When the integrity of an individual is impunged and he is publicly censured without any opportunity to answer, he is justified in appealing to the court to rectify the wrong. A grand jury under the guise of a presentment must not be permitted to attack the good name of a citizen. It is unquestionably true that the public mind is impressed by the utterances of such a body. It is a grave matter to charge a public official with misconduct in office. The consequences may be very serious. In this case it cannot be seriously disputed that the emanations of the grand jury reflect on the petitioner’s integrity. His official conduct is criticized, his motives are *90 impugned and he is held out as deserving of chastisement and reprobation. Even a grand jury should not attack with impunity the character of a citizen. Many a man of good repute in the world’s ear may have his reputation blasted in this manner. I am not impressed with the argument that the members of this grand jury acted maliciously or in bad faith. Undoubtedly their motives were the purest. That, however, does not atone for the injury. A grand jury should not substitute suspicion for proof. The meanest criminal in the land is 'entitled to his day in court, to meet his accusers face to face before he is condemned. A public official is entitled to the same consideration. It is just as important that one should be fairly accused as that he should be fairly tried. * * * Scathing pronouncements by a grand jury are highly reminiscent of the days when the Star Chamber and the Court of High Commission cast their baleful shadows over every English home.” (Matter of Funston, 133 Misc. 620, 621-623.)
The question of the power of a Grand Jury to make a report is not novel in Monroe County. In Matter of Wilcox (153 Misc. 761) the question was clearly presented and decided by Mr. Justice Knapp on December 15, 1934. It appears in that case that a Monroe County Grand Jury made an investigation of election irregularities in the Fourth Ward of the city of Rochester. Following such investigation they reported to the court that they were unable to obtain sufficient evidence to return indictments but charged in said report that the election inspectors were generally indifferent and grossly incompetent and recommended that all of the election inspectors of both political parties in said ward be removed from office. One of the election inspectors made a motion to expunge the report. Mr. Justice Knapp in a most scholarly opinion reviewed the authorities, both in New York State and in other jurisdictions, and granted the motion to expunge the report on the ground that the Grand Jury had exceeded its authority.
Even before the decision in Matter of Wilcox (supra) and in June, 1933, Hon. Marsh N. Taylor, then a Justice of the Supreme Court and later Presiding Justice of the Appellate Division, Fourth Department, refused to receive a report of a Monroe County Grand Jury. Later in 1949 in this Judicial District, Hon. H. Douglas Van Duser, then a Justice of the Supreme Court and later Associate Justice of the Appellate Division, Fourth Department, ordered sealed a portion of a report of a Cayuga County Grand Jury. In March, 1957 a Livingston County Grand Jury reported that the county court house was badly in need of repairs. The report was received *91 and served a useful purpose because the Board of Supervisors caused the necessary repairs to be made.
Thus it may be seen that reports of grand juries, even though unauthorized, on occasion serve a useful and constructive purpose, and in such instances they are usually received by the court.
In this judicial district, it has been recognized as the law for more than 20 years that when a grand jury, in the course of investigation into the alleged corrupt misconduct in office of public officials fails to return any indictments, a report criticizing the conduct of such officials is improper as it affords the person so criticized no opportunity to answer the charges made. Where such a report is made, the court may refuse to receive it, order it sealed, or receive it and on motion of one aggrieved, order it expunged.
I now consider the report in question. The first portion of the report deals with the investigation made by the Grand Jury in connection with the indictment of a policeman named John Lipari. The investigation was apparently made to determine whether or not he had accomplices within the Police Department. The report indicates that he had none, but suggests that salaries of policemen should be raised. The Grand Jury making the report is the same Grand Jury which found an indictment against Lipari, which subsequently resulted in his conviction and sentence to State prison.
Where a grand jury returns an indictment, it should not at the same time make a report of its investigation out of which the indictment arose, or if such report is made, it should be sealed until the case against the person indicted is finally closed. It is quite apparent that such report may in some unforeseen manner prejudice the fair trial of the person indicted, or be used by the prosecution or by the defense in the course of such trial in a manner which would be prejudicial to the rights of the People or of the defendant. As to whether or not the report in question would or could have been so used, is not important. The fact is that when the Grand Jury rose, I considered that in the exercise of my discretion the revelation of the contents of the report at that time might have been prejudicial to a fair trial of the criminal action against Lipari and I therefore ordered the report sealed. Lipari has now been tried and convicted and his right of appeal has expired, and I have therefore concluded that this portion of the report can properly be unsealed at this time.
In the second part of the report the Grand Jury takes “ strong exception to statements ” allegedly made by my *92 learned colleague, Mr. Justice O’Maka, and me, relating to the powers of grand juries to make reports. Laws are enacted by the Legislature and are interpreted and construed by the courts. The grand jury is an arm of the court, but is not the court. (Matter of Spector v. Allen, 281 N. Y. 251; People v. Stern, 3 A D 2d 443, 447. The court is required to charge the grand jury (Code Crim. Pro., § 241 [former § 248]) and to advise them (Code Crim. Pro., § 255 [former § 262]).
This court does not question the sincerity and good intentions of the Grand Jury in making the report. However in doing so they undertook an excursion into a field wholly outside of their province or jurisdiction. (Code Grim. Pro., §§ 253, 245, supra.)
It may be assumed that the members of the Grand Jury have never conducted an independent research as to the precise functions of a grand jury or read the numerous decisions construing the law relating to the grand jury’s jurisdiction, many of which have been cited herein. When the Grand Jury in its official capacity, as an arm of the court, attempts to ‘‘ take exception ’ ’ with Justices of the Supreme Court on matters of law, there may well arise in the public mind an inference that the Justices were in error in their opinions and were for that reason being criticized by the Grand Jury.
This court re-emphasizes the right of the members of the Grand Jury, as individuals, and of all citizens, under the Bill of Rights, to criticize or disagree with public officials whether in the Legislature, executive or judicial branches of the Government. However, when a grand jury, as an arm of the court, undertakes to express an opinion on matters of law differing from those expressed by the court, such grand jury clearly exceeds its authority. The comment of the Grand Jury aforesaid was not in any way connected with any investigation into the willful and corrupt misconduct in office of any public official and was a mere gratuitous expression. It is interesting to note that the Grand Jury, in its report, criticized no public official of the County of Monroe or City of Rochester, nor any governmental department or subdivision of these two municipal corporations.
“ Unless it is affirmatively established that the grand jury was conducting an inquiry within the provisions of section 260 of the Code of Criminal Procedure, * * * then the grand jury has no right, power or authority to submit [such] presentment.” (Matter of Healy, supra, p. 597.) This court therefore concludes that it was fully justified in ordering the sealing of the report at the time it was presented, and although, the *93 report is at this time hereinbefore set forth in full and thus made public, the last portion of the report, in which the Grand Jury purports to differ with the opinions heretofore expressed by Mr. Justice O’Mara and me, should not be permitted to stand as part of the records of this court and is therefore ordered to be expunged. Since it is expunged, it ceases to be a record of the court and is therefore not subject to this proceeding.
The motion is granted as to the first part of the report relating to the investigation in the Lipari case and is otherwise denied.
Submit order on notice.