Mitchell D. Schweitzer, J.
On September 17, 1958, this court impaneled the Third September, 1958 Grand Jury. The court charged this Grand Jury that its inquiry would be confined “ to an investigation into the way that certain television quiz programs had been conducted.” Included in the charge was the following direction: “ I will not charge you with respect to any specific provisions of the Penal Law because I do not know what evidence will be presented to you. If the facts, as you find them, involve possible violations of the Penal Law, the District Attorney will call the appropriate sections to your attention. ’ ’
Some 200 witnesses were examined by this Grand Jury in 59 session days spread over a period of almost nine months. No indictment was returned by the Grand Jury for any substantive violation of any provision of any penal statute.[1]
Sometime in March of 1959, counsel representing various television interests which were the subject of the Grand Jury investigation, anticipating the filing of a report, requested an opportunity to submit memoranda of law to support their position that no such power was vested in the Grand Jury. The court granted the request and directed that copies be served on the District Attorney. These briefs from attorneys representing Jack Barry and Entertainment Productions, Inc., were received in the latter part of April. Counsel for these interests took the position that a Grand Jury was not legally empowered to file a report in this area of inquiry.
Therein lies the genesis of the challenge to the filing of the report which was eventually proffered to this court by the Grand Jury on June 10, 1959, the day that the Grand Jury appeared in court for formal discharge.
The court, having already read the report, held it to be prima facie expungable and directed that it be impounded and sealed pending a formal determination as to the legal propriety of its acceptance for filing. All interested parties were given permission to file briefs.
The District Attorney’s office subsequently filed a brief in support of the filing of the report.[2] The Grand Jury Associa *684 tion of New York County and the Citizens Union have filed briefs urging the acceptance and filing of the Grand Jury’s report.[3]
The Kings County Criminal Courts Bar Association, the Association of Lawyers of the Criminal Courts of Manhattan, the Criminal Courts Bar Association of Queens County, Inc., the Federal Bar Association (Empire State Chapter), the New York Civil Liberties Union, and the Queens County Grand Jurors Association have each filed briefs urging that the Grand Jury does not have power to file nor does the court have the authority to accept a report of the Grand Jury on the issues involved herein.
THE ISSUE
The issue before the court is whether a Grand Jury may file with the court a report of its findings and recommendations relating to the activities and conduct of private persons engaged in private enterprise.
An exhaustive study of the applicable precedents and statutes requires a holding that the Grand Jury is not so empowered nor may the court properly accept the proffered report.
LAW GOVERNING GRAND JURY’S POWERS
Whatever may have been the amorphous power of the Grand Jury at common law, it is no longer a subject of dispute that a Grand Jury in New York State derives its power to act only from our Constitution and our Code of Criminal Procedure. This view has been succinctly stated most recently by the Court of Appeals in People v. Stern (3 N Y 2d 658, 661 [1958]). It was therein stated: “ In this State the Grand Jury derives its power from the Constitution and acts of the Legislature (N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 223, 245, 252, 253).” (See, also, Matter of Funston, 133 Misc. 620.)
Section 14 of article I of the Constitution of this State provides that the common law persists only insofar as it is not repugnant to the Constitution. Section 6 of article I of the Constitution, provides as follows: “ The power of grand juries to inquire into the willful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, shall never be suspended or impaired by law. ’ ’
*685 Throughout the range of criminal law in this State, the common law has been abrogated. Section 22 of the Penal Law provides that no act or omission shall be deemed criminal except by statute. Section 41 of the Penal Law provides that the manner of prosecuting and convicting criminals is regulated by the Code of Criminal Procedure.
Turning, then, to the constitutional and legislative enactments on the subject, it becomes demonstrably apparent that the Grand Jury is without power to file a report, such as was here presented, wherein although no crime is charged, the conduct of private individuals in the pursuit of their private enterprises is found wanting in other respects.
In this latter regard, the powers and duties of the Grand Jury are exclusively derived from and, perforce limited by sections 245 and 253 of the Code of Criminal Procedure.
Section 245 provides that “ The grand jury has power, and it is their duty, to inquire into all crimes committed or triable in the county, and to present them to the court.”
Section 253 elaborates by stating:
“ The grand jury must inquire,
“ 1. Into the case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted; and “ 2. Into the willful and corrupt misconduct in office, of public officers of every description, in the county.
‘ ‘ 3. The grand jury may inquire into the condition and management of the public prisons in the county.”
The proffered report deals with none of these situations. Sections 245 and 253, defining the powers of the Grand Jury, speak only of the power of inquiry. The Code of Criminal Procedure and the Constitution are silent as to any power to report. Such a power, if it exists at all, can only be found by necessary implication from the powers of inquiry expressly granted to the Grand Jury.
LAW RELATING TO PUBLIC OFFICIALS
From the facts, it is readily discernible that this court is not concerned with any issue relating to a Grand Jury’s power to report in a sphere involving the conduct of a public official. However, a comprehension of the.question here involved necessitates an examination of the law applicable to such reports.
In this State, there is but one appellate decision which considered that issue in its relation to public officials. (Matter of Jones, 101 App. Div. 55 [2d Dept.], appeal dismissed 181 N. Y. 389 [1905].)
*686 In the Jones ease a majority of the court refused to expunge a Grand Jury report which had censured certain public officials for their conduct in office. The majority did not predicate its holding upon any broad ground of inherent power in the Grand Jury. Its holding was made directly referable to the specific language of section 253 (then enumerated as § 260) and section 254 (former § 261) of the Code of Criminal Procedure. These sections respectively empowered the Grand Jury to inquire into the “ willful and corrupt misconduct in office, of public officers ” and “ all public records in the county.” From those express statutory grants of power, the majority reasoned that the power to report subsisted by implication: “ We may assume that these powers are conferred for some purpose. Official inquiry intends either official action or official report. As such powers are limited to inquiry, the grand jury has no executive or administrative authority in the premises, the result of any inquiry must be report or statement which will call attention to the wrong ” (p. 57).
Those Justices who dissented in the Jones case were unalterably opposed to any pronouncement of implied power to report on misconduct which fell short of being charged as criminal. The minority observed: “ If it has the right to censure the petitioners in the manner now before us, it is difficult to conceive of any limitation upon the powers of the grand jury; it may establish its own standards of right and wrong, and may subject the citizen to the odium of a judicial condemnation without giving him the slightest opportunity to be heard, oftentimes working, in the public estimate, as a great injury to his standing and character as though he had in fact been accused of a crime. This is a perversion of the essential spirit of the grand jury system, which had for its object the protection of the citizen against an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment ” (pp. 59-60).
The majority opinion in the Jones case has found but few protagonists in the lower courts of record (e.g., Matter of Quinn, 5 Misc 2d 466; People v. “ John Doe ” [Halleran], 176 Misc. 943; Matter of Lundy, 208 Misc. 833).
To the contrary, there is an impressive array of decisions following the dissent of the Jones case and holding that a Grand Jury lacks all authority to issue a report not amounting to an indictment, even as against a public official (e.g., Matter of Gardiner, 31 Misc. 364; Matter of Osborne, 68 Misc. 597; Matter *687 of Crosby, 126 Misc. 250; Matter of Funston, 133 Misc. 620; People v. McCabe, 148 Misc. 330; Matter of Wilcox, 153 Misc. 761; Matter of Woodbury, 155 N. Y. S. 851; Matter of Heffernan, 125 N. Y. S. 737; Matter of Clay v. Wickens, 7 Misc 2d 84).
In Matter of Gardiner (supra) Judge Foster, sitting in the Court of General Sessions, New York County, set aside a report filed by a Grand Jury in which it was critical of the conduct of a District Attorney. In Matter of Osborne {supra) Judge Goer, sitting in the Supreme Court, Criminal Term, New York County, expunged a report of a Grand Jury which criticized the conduct of a representative of the Attorney-General’s office. He therein observed: “ It has become a custom of almost invariable occurrence that the grand jury, at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be remedied. So long as they are confined to matters of general interest, they are regarded as harmless, even though a waste of time and effort, and after the ephemeral notice of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held to reprobation, without an opportunity to defend or protect his name and reputation, for it must be borne in mind that if the gentlemen of the grand jury were to meet as an association of individuals and give expression to the sentiments contained in a presentment, little attention would be paid to them, and a healthy regard for the responsibility of utterances injurious to the individual would, in all probability, restrain exaggerated and unfounded statements. The mischief arises from a prevalent belief that a grand jury making the conventional presentment speaks with great authority and acts under the sanction of the court, thereby giving to its deliverance a solemnity which impresses the mind of the public. This is a grave error. The powers and duties of a grand jury are defined by law. No matter how respectable or eminent citizens be who comprise the grand jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do that, under an ancient form, which they have not a legal right to do ” (pp. 603-604).
This latter view seems also to be the prevailing view in other jurisdictions and in the Federal court. (See, e.g., Parsons v. Age-Herald Pub. Co., 181 Ala. 439; Matter of Report of Grand Jury, 152 Md. 616; Bennett v. Stockwell, 197 Mich. 50; Bennett *688 v. Kalamazoo Circuit Judge, 183 Mich. 200; State ex rel. Strong v. District Court, 216 Minn. 345; State v. Bramlett, 166 S. C. 323; Matter of Jennings, 91 Tex. Cr. Rep. 612; Matter of Report of Grand Jury, 204 Wis. 409; Matter of Report of Grand Jury, 123 Utah 458; Rector v. Smith, 11 Iowa 302; Matter of Charge to Grand Jury, 3 Pitts. Rep. 174 [Pa.]; Matter of United Elec., Radio & Mach. Workers, 111 F. Snpp. 858; Matter of Report of Grand Jury for April 1911 Term, 4 U. S. Dist. Ct. Hawaii, 780.)
LAW RELATING TO PRIVATE INDIVIDUALS
Whatever divergence of opinion might exist in the various courts regarding the propriety of a Grand Jury reporting within the limits of permissible inquiry relating to public officials as delineated by section 253 of the Code of Criminal Procedure, it would be well nigh impossible to envisage a legal proposition which has received greater acceptance of support than the doctrine that a Grand Jury may not file a report criticizing or accusing individuals in their private capacity for wrongful conduct, or censuring a particular practice in private enterprise.
This is true not only in the State of New York, but in those other States with identical or comparable statutes governing the powers and duties of a Grand Jury.
In New York, the single reported case specifically covering the instant issue is Matter of Healy (161 Misc. 582). The report therein criticized the alleged misconduct of a private individual who occupied a political party office. The court drew a clear line of distinction between a public official who might come under Grand Jury scrutiny pursuant to the pertinent provisions of section 253 of the Code of Criminal Procedure, and an individual as a private citizen. In quashing the report, the court, Colden, J., used this apposite language:
“ The difficulty here, however, is that the presentment censures not a public official for matters coming within the provisions of section 260 of the Code of Criminal Procedure, but accuses an individual as a private citizen of a course of conduct of which they disapprove, and then deprives him of one of the highest privileges of American citizenship, his right to his day in court, his right to meet his accusers face to face, to confront them with his testimony and that of his witnesses. He is compelled to stand mute. He is denied the right to examine his accusers under oath, in public where the truth or falsity of their accusations may be determined. He is denied a trial before an impartial tribunal. Under our system of jurisprudence every man, be he the most upright or the most depraved, is entitled to such day in court. But under this presentment, the petitioner, *689 through testimony taken in secret and kept secret by our law, has been tried and condemned. The star chamber should find no abiding place in America. * * *
“ The history of our grand jury system is one of great nobility and of service, of protection to the humble from the unwarranted accusations of the great and mighty. For a thousand years, it has been in the process of magnificent development — a shield to the innocent, a sword to the guilty.
“No king, no emperor, ever successfully controlled its determinations, and throughout the centuries it has protected the oppressed. In our State it holds a future of great usefulness provided it keeps within the bounds of the statutes, the decisions of our courts and to its own fine traditions placed around its activities.
“ To single out an. individual, not by reason of any acts in public office, not by reason of any acts as a public official, and to condemn him without a trial, without an opportunity to be heard, without the privilege of making a defense in a free American court of justice, to attempt to deprive him of his good name, to besmirch his character, is so unfair, so repugnant to the ideals of the administration of justice in America, as to merit the disapproval of this court.
“ The petitioner, Healy, has been accused and censured not as a public official but as an individual, and in no reported case in this country of which this court has cognizance has any such action been approved.
“ The court conceives it to be his duty in the administration of justice to offer every possible protection to every citizen, wfiether of the highest or the humblest, in the protection of his good name and reputation just as he likewise conceives it to be his duty to protect society by the punishment of evildoers who have been charged and convicted of crime.
“ This grand jury has undoubtedly unintentionally acted as the judge in a star chamber proceeding and has rendered the verdict without giving the defendant his day in court. It is to be hoped that future grand juries will avoid transgressing upon the inherent rights of American citizenship, upon the highest ideals of American justice, and that other citizens may not be so wrongfully and unjustly humiliated ” (pp. 597-599).
Some four years later, in 1941, the same court, in People v. “ John Poe ” (Halleran) (176 Misc. 943, 945, supra) stated that the right of a Grand Jury to hand up a report is “limited to the acts of public officials, and may not be used against private individuals.”
*690 Again, in Matter of Clay v. Wickens (7 Misc 2d 84, 87, supra) in referring to the cases following the majority view in the Jones case authorizing the filing of a report involving the wrongful and willful misconduct in office of a public official, the court stated that all of these cases “ are all in accord that this is the only possible circumstances under which a Grand Jury is authorized to make a report.”
In other jurisdictions, it has been held with almost uniform regularity that a Grand Jury has no reportorial powers in a sphere involving private individuals. The highest court in Minnesota, in construing a statute governing the powers of a grand juror, which is almost identical with that in New York, stated: “ The concensus of judicial opinion seems to be that reports of grand juries, though in a form of a * presentment,’ are not privileged and, if reflecting on official or private conduct of individuals, should be suppressed or expunged from the records of the court.” (State ex rel. Strong v. District Court, 216 Minn. 345, 349-350.) In accord, see Matter of Jennings (91 Texas Cr. Rep. 612; Ann. 22 A. L. R. 1351).
The law on this subject was ably explored in an exhaustive opinion of Judge Weineeld, in a case in the United States District Court for the Southern District of New York, Matter of United Elec. Radio & Mach. Workers (111 F. Supp. 858, 86J-865). That case involved a report of a Grand Jury criticizing unnamed union officials. The court therein stated: “It may be said that the Grand Jury’s function is to determine whether there is enough evidence before it to support the charge of crime and so to create a ‘ case or controversy ’ which then must he turned over to the court for trial and final determination. If there is, the Grand Jury returns an indictment; if there is not, it remains silent. Once having determined that the evidence is insufficient, its function ends. It may not then issue a report based upon information derived during the course of a secret inquiry, directed to the executive and legislative branches, which touches upon matters within their exclusive authority * * * Their hearings, being secret, are not amen-
able to informed evaluation by the public and are unsuited to make the determinations which our Constitution has allotted to the executive and the legislature.”
As the late Judge Medaeie pointed out: “ While the Grand Jury is doubtless an inquisitorial body with respect to crimes, it clearly has no such inquisitorial function as to matters in which specified crimes are not involved.”
*691 At least in cases not involving misconduct in public office, he wrote, there is no basis, either in the statutory or decisional law, in history, or in policy, for a Grand Jury’s issuance of a report or “ presentment ” (ibid, pp. 5-6). He further observed that investigations into matters of general public interest are best left to the executive and legislative branches of the government, which have special competence and proper facilities therefor (ibid, pp. 6-7).
Underlying the uniform judicial denials of a Grand Jury’s power to report on the mores of private individuals, is a philosophy logically deduced from basic principles of fair play — • that no individual should be condemned without an opportunity to defend.
The language of Judge Cuff, in People v. McCabe (148 Misc. 330) although used in a case involving a public official, is even more relevant to a report involving the conduct of private citizens. It was therein stated: “A presentment is a foul blow. It wins the importance of a judicial document, yet it lacks its principal attributes — the right to answer and to appeal. It accuses but furnishes no forum for a denial. No one knows upon what evidence the findings are based. An indictment may be chaEenged — even defeated. The presentment is immune. It is like the ‘hit and run ’ motorist. Before appEcation may be made to suppress it, it is the subject of pubEc gossip. The damage is done. The injury it may unjustly inflict may never be healed ’ ’ (pp. 333-334).
ACCEPTANCE OF PAST REPORTS
It has been suggested that the past acceptance by various courts of Grand Jury reports should be a consideration in determining the issue presented herein. However, the suggestion begs the question. We are not concerned with past practice but with the warrant of the Grand Jury to file a report in the first instance. If the Grand Jury lacks such power, then the prior indulgence of the court or the failure of interested parties to seek expungement cannot create any right where none exists.
In seeking to explain the extralegal actions of grand juries, Bichard H. Kuh[4], in an article entitled “ The Grand Jury ‘ Presentment ’: Foul Blow or Fair Play? ” (appearing in 55 Col. L. Rev. 1103, 1104-1105 [Dec., 1955]) wrote: “ The continued appearance of these reports might be attributable to the *692 common belief among lay grand jurors, uninstructed in the law, that they are a power unto themselves and can peer into any matter that their civic consciences indicate need investigation. Possibly, reports continue because of a disregard of legal precedents by prosecutors who guide the grand juries and by judges who accept these reports and permit them to become matters of court record. Or conceivably, the knowledge of the rarity of motions to expunge may serve as an informal license to juries, prosecutors, and courts bursting with information that they believe will contribute to community enlightenment.”
"When confronted with the same contention, Judge Weinfeld, in Matter of Elec., Radio & Mach. Workers (111 F. Supp. 858, 869, supra) used this pertinent language: “ The United States Attorney refers to the fact that reports in this district have been accepted through the years without protest. He points to some fourteen in number, filed in the past sixteen years. That they have been received without challenge does not import judicial sanction or authority in the Grand Jury to issue them. Whether individuals were named therein or whether they related to general conditions is not stated. The most that can be said is that they were not challenged and were permitted to go by default.”
Clearly, the usurpation of an unauthorized power by a Grand Jury cannot transform the fruits of such a power into a legal act. Binding procedure cannot be established by dubious prescription ; that is to say, if it was unauthorized, as it is clearly indicated that it was, to receive such a report, the practice cannot be validated by continued infractions.
OMISSION OF NAMES IN EEPOET
It has been assumed and argued that the instant report should be accepted and filed because it does not disparage the good name or reputation of any specificially named individual. Apart from the fact that this contention disregards the Grand Jury’s inherent lack of authority to issue such a report, it is, in any event, unrealistic when viewed in the context of present-day mass communication media. The mere fact that no specific names are mentioned cannot serve to validate an otherwise unauthorized Grand Jury report. Such reports are, in any event, regarded as objectionable even if they adversely reflect only by innuendo on the activities of individual persons. (Matter of Wilcox, 153 Misc. 761, 769, supra.) In that case, the Grand Jury’s report related to the activities of unnamed inspectors of election. The same argument of anonymity was rejected in *693 Matter of United Elec., Radio & Mach. Workers (supra) where the Grand Jury report concerned 13 unnamed labor union officials.
What is overlooked is the fact that those engaged in the operation of television quiz programs are comparatively few in number and easily identifiable. Thus, not only does the report have the effect of condemning easily identifiable individuals, but it bears the correlative hazard that by not naming specific individuals whom it criticizes, others in the same field of endeavor who have never engaged in any dubious practices may readily find themselves stigmatized with the same stamp of condemnation. (See Kuh, op. cit., supra, pp. 1129-1130.)
SUPPRESSION OP REPORT BY COURT ABSENT FORMAL MOTION TO EXPUNGE
The question remains whether, as urged by the Grand Jury Association of New York County, the court “ has no choice but to accept * * * for filing as a court record ” any and every report presented to it by a grand jury, subject to the exercise of judicial scrutiny thereafter, upon a motion to expunge the report. The court’s function in supervising the acts of the Grand Jury, to make certain that it does not exceed the bounds prescribed by law, cannot, however, thus be reduced to that of a mere automation.
Patently, such procedure would permit the evil sought to be avoided to penetrate and destroy. Any relief granted thereafter would be illusory at best and the affected person would be left with the consolation of a Pyrrhic victory. Such procedure would be a meaningless circuity.
The more compelling and logical course is not to receive the report in the first instance. Summary rejection has authoritative precedent. Judge Medalie, in his discussion of Grand Jury Investigations in volume 7 of The Panel (No. 5, p. 6 [1929] discusses such summary rejection in this very court. And in Matter of Clay v. Wichens (7 Misc 2d 84, 90, supra) the court observed: “ Even before the decision in Matter of Wilcox {supra) and in June, 1933, Hon. Marsh N. Taylor, then a Justice of the Supreme Court and later Presiding Justice of the Appellate Division, Fourth Department, refused to receive a report of a Monroe County Grand Jury. Later in 1949 in this Judicial District, Hon. H. Douglas Van Duser, then a Justice of the Supreme Court and later Associate Justice of the Appellate Division, Fourth Department, ordered sealed a portion of a report of a Cayuga County Grand Jury.”
*694 This learned Judge made further reference to the fact that in the Seventh Judicial District: “ it has been recognized as the law for more than 20 years that when a grand jury, in the course of investigation into the alleged corrupt misconduct in office of public officials fails to return any indictments, a report criticizing the conduct of such officials is improper as it affords the person so criticized no opportunity to answer the charges made. Where such a report is made, the court may refuse to receive it, order it sealed, or receive it and on motion of one aggrieved, order it expunged ” (p. 91; italics, supplied).
This procedure is also followed in other jurisdictions. In Burke v. Territory of Oklahoma (2 Okla. 499), the court, in discussing this very problem said: ‘ ‘ The court is not bound to receive and accept from the grand jury everything which it may present * * * it was not at all improper for the judge to take the matter of receiving this report under consideration * * * indeed it would have been improper, for him to have permitted the report to have been published wntil he had concluded that it was in proper form to be received ” (pp. 519-520; italics supplied).
In a like manner, a Michigan court, noting the speed with which a report was published within a few hours after filing by the Grand Jury, stated: “ Upon the coming in of said report, we are of the opinion, that it was the duty of the trial court to have refused to accept it, or file it with the records of this court.” (Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200, 212, supra; italics supplied.)
PUBLIC INTEREST IN PROEEERED REPORT
The court well appreciates the good faith and sincerity of the District Attorney and the Grand Jurors in their desire to acquaint the public with the results of their long and arduous investigation but the asserted public interest that, it is urged, would be served by disclosure of the Grand Jury findings cannot justify departure from the fundamental principles here involved.
The issue before us is the prime one of the necessity of procedural regularity — on which our entire system of jurisprudence is predicated, rooted as it is in concepts of due process and the law of the land. The public interest requires that the Grand Jury, like all public bodies, acts in accordance with the law.
There has been a good deal of clamor, notably in the public press, concerning the claimed right of the public to know the contents of the report of the Grand Jury’s investigation. As has already been stated, the law clearly mandates against this *695 court’s permitting the dissemination of those findings. Limited use of the minutes of all of the testimony before the Grand Jury — the testimony that forms the basis for the jury’s report —is, however, quite another question. Such minutes may be made available to be utilized in preparation for private or public hearings conducted by a properly authorized body. It has long been the law in this State that, when the public interest requires it, Grand Jury minutes will be made available to such agencies as have a legitimate interest in them. (Matter of Attorney-General of United States, 160 Misc. 533 [Kings County Ct., 1936] [minutes of State investigation which led to grand jury report concerning banking operations released, for use in connection with Federal criminal trial, on application of the United States Attorney-General]; Matter of Crain, 139 Misc. 799 [Ct. of General Sessions, 1931] [minutes of market investigation conducted by New York County District Attorney released to investigators into the conduct of that office].)
Indeed, in August of 1959, this court received two petitions from committees of the United States Congress concerned with Federal regulatory activity, requesting that the court make available to them the Grand Jury minutes of this television quiz inquiry. Immediately upon receiving these petitions, an order was issued directing that the minutes be promptly typed and turned over to the committees. This meant the full testimony of all witnesses before our Grand Jury was to be available for utilization by the committees in furtherance of proper Federal action.
The minutes released in this fashion to the Special Congressional Subcommittee on Legislative Oversight (“the Harris Committee ”) have formed the blueprint for the investigation that ultimately brought to the public’s attention the abusive practices that existed in connection with television quizzes. The tenacity of the Third September, 1958 New York County Grand Jury, and of the District Attorney of New York County, in their search for crime in violation of State law, although not productive of proof of any State penal violations, developed this morally fraudulent picture. It cannot be gainsaid that the work of this entire Grand Jury, under the guidance of New York County’s District Attorney, Frank S. Hogan, and his staff, has contributed immeasurably to this picture. The masquerade — which has now become public through proper channels — renders understandable and commendable the eagerness of the Grand Jurors and of the District Attorney that the public should be informed.
*696 Certainly, as this Fall’s Congressional committee hearings have proven, the basic facts underlying the report of the Grand Jury should be made available to the public. However, the rule of secrecy which forbids the disclosure of Grand Jury testimony does not, as has already been indicated, prevent its use under prescribed limitations by any authorized agency. Hearings may then be facilitated through the use of this testimony, and in this manner a proper disclosure of underlying facts may legally satisfy the public’s right to know. However, not even by indirection can there be a public disclosure of the opinions and the recommendations of the members of the Grand Jury contained in the suppressed report. That function properly devolves upon the duly elected representatives of the American people or upon such committees as they may legally designate. A Federal Congressional committee, conducting hearings designed to review the impact of existing Federal laws and the performance of regulatory agencies, has powers that a county Grand Jury, probing for criminal conduct that may afford a basis for indictment, lacks.
CONCLUSION
Much of our law consists in decisions arrived at after a just balancing of seemingly conflicting interests. In the instant case, is the concern on the one hand of the public to receive any and all information obtained by a Grand Jury; opposed is the concern— and it is a public concern — that the reputations of private individuals should be free from indefensible disparaging comments by a body whose quasi-official position carries, in the public mind, a warranty of accuracy and good faith. In point of fact, a Grand Jury proceeding is an ex parte one; a Grand Jury usually hears only evidence directed to it by the prosecution; it is attended by no counsel but the prosecution’s. Tet, in the case of a report, its word is stamped with the aura of finality.
The very statement of the competing interests itself answers the question as to which must prevail. It is the right of the individual to be free from quasi-official disapprobation that clearly takes precedence. Despite all the curiosity the community may have as to what the Grand Jury believes it has discovered, the greater service is done over the long range when the public knows that an individual or a group of individuals will be free of the quasi-officially imposed disgrace of a Grand Jury report, where no opportunity is given to defend in the traditional manner with full right of confrontation and cross-examination. The Grand Jury is not a vehicle for the public airing of the noncriminal immorality of private citizens.
*697 The sum of all this is that unless there is explicit legislative or constitutional sanction for the making of these so-called reports, no court should indulge in any presumptibns or inferences, to create the right of Grand Juries to report in this sphere of inquiry.
Neither the court nor its arm, the Grand Jury, may take unto itself an authority or power not granted by the Constitution or the Legislature. That authority — that power — has been shown to be absent. One cannot help but be reminded of the course taken by Mr. Justice Cabdozo when confronted with a comparable dilemma. That most learned Judge stated, in Matter of Doyle (257 N. Y. 244, 268): “ We are not unmindful of the public interests, of the insistent hope and need that the ways of bribers and corruptionists shall be exposed to an indignant world. Commanding as these interests are, they do not supply us with a license to palter with the truth or to twist what has been written in the statutes into something else that we should like to see. Historic liberties and privileges are not to bend from day to day ‘ because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment ’ (Holmes, J. in Northern Securities Co. v. United States, 193 U. S. 197, 400), are not to change their form and content in response to the ‘ hydraulic pressure ’ (Holmes, J., supra) exerted by great causes. A community whose judges would be willing to give it whatever law might gratify the impulse of the moment would find in the end that it had paid too high a price for relieving itself of the bother of awaiting a session of the Legislature and the enactment of a statute in accordance with established forms.”
In the light of the law hereinabove set forth, whatever might be said for making public the views of a Grand Jury on the question of misconduct of a public official which does not result in a criminal indictment, there is no such compelling reason to extend that power to reports of a Grand Jury covering the activities of private citizens or corporations.
The function of the Grand Jury is to ascertain if any crime has been committed. It is not to censure or criticize generally public morals or business ethics. Where private citizens are involved, the function of the Grand Jury ends when it determines that no crime has been committed.
The application of the Third September, 1958 Grand Jury to file a report is denied.

 One indictment was returned — but this was for perjury before this Grand Jury, not for any penal violation arising out of the method of conducting quiz shows.

 Many of the briefs refer to the document sought to be filed as a “ presentment.” A “presentment,” in present-day parlance, is often equated with the word indictment. To avoid confusion, the document sought to be filed herein shall be denominated as a report.

 A brief urging the acceptance of the report has also been submitted by an advertising competitor of one of the sponsors of a television quiz program. It is primarily devoted to the condemnation of false advertising techniques and presents an area of conflict not pertinent here.

 The author, an Assistant District Attorney in New York County, states that the views expressed in this article do not in any way represent the official views of the office of the District Attorney of New York County.