Chief Judge Desmond (dissenting).
I dissent. This decision deprives New York grand juries of a power and duty they have had for three centuries, strips an 80-year-old statute (Code Grim. Pro., § 253, subd. 2) of all meaning or effect, and ignores the prohibition of our State Constitution (art. I, § 6) against impairment of “ The power of grand juries to inquire into the wilful misconduct in office of public officers ”. It overrules the only previous New York appellate court holding on the subject (Matter of Jones v. People (101 App. Div. 55 [1905]). It approves the complete suppression of a temperate, reasoned criticism by grand jurors of the conduct of public affairs in their county. A reversal of this order and a reinstatement of the grand jury’s report is required by the Constitution and the Code of Criminal Procedure and by the policy and tradition they express.
The grand jury is not a creature or subordinate of the court but “ insofar as its jurisdiction is concerned, it is an independent body ” to which the law has afforded “ the widest possible latitude in the exercise of [its] powers ” and has “ insisted that in the absence of a clear constitutional or legislative expression they may not be curtailed ” (People v. Stern, 3 N Y 2d 658, 661, 662). To deny the grand jury’s power to investigate and report on official misconduct is to deny history, as Judge Fkoessel’s scholarly opinion shows. The records of the New York County District Attorney’s office show that in that county alone about 500 grand jury reports have been filed and made public and that the only one which was refused filing was a report which *157 did not involve any public officials or public affairs (see Matter of Grand Jury [T. V. Quiz Program], 19 Misc 2d 682). Any newspaper reader knows that such reports are regularly and frequently filed and publicized all over this State.
And if history, tradition and practice are not enough, we have ' a statute imposing the duty in words which permit no other meaning. Subdivision 2 of section 253 of the Code of Criminal Procedure says: 1 ‘ The grand jury must inquire * * * Into the wilful and corrupt misconduct of public officers of every description, in the county.” It was passed in 1881 (as Code Crim. Pro., § 260) at the same time as present section 245 (then § 252) which confirmed the other fundamental right and duty of grand juries ‘ ‘ to inquire into all crimes committed or triable in the county, and to present them to the court. ’ ’ The section 253 function of inquiring into official misconduct of public-officers is obviously and necessarily distinct from the general grand jury business of investigating charges of crimes and of voting indictments. To construe the separate command of section 253 as meaning that an investigation thereby commanded must lead to an indictment or a no-bill or lead nowhere is to divest section 253 of any meaning or purpose and to make it completely redundant. The enactment of these two statutes concurrently in 1881 was part of a long effort to provide a complete criminal code for the State (see Fourth or 1849 Report of Commissioners of Practice and Pleadings recommending these laws, and see reference in Matter of Gardiner, 31 Misc. 364 [1900] to a proposed criminal code submitted in 1850). It is patent that the commission and later the Legislature were codifying the then existing traditional law which made it the duty of grand juries not only to investigate crime generally but additionally to inquire into and report on charges of official misconduct whether criminal or not.
The post-1881 legislative history of present section 253 shows continued recognition of this separate power of the grand jury to report on misconduct in public office. Section 253 from its origin stated two other grand jury powers: to inquire “ Into the case of every person imprisoned in the jail of the county, on a criminal charge ” and to inquire “ into the condition and management of the public prisons in the county ”. As to each of these the word used from 1881 to 1939 was “ must ”. In 1939 (ch. 770) the statute was amended so that thereafter it provided that, while grand juries “must” inquire into official miscon *158 duct and into the cases of persons in jail on criminal charges, a grand jury now “ may ” inquire into the condition and management of local places of imprisonment. The change was made to relieve grand juries of a burden of inspection borne in modern times by the State Department of Correction (see Governor’s bill jacket). But, as to inquiring into “ the wilful and corrupt misconduct in office of public officers of every description in the county”, the mandatory language remained unchanged.
Recognition by the Legislature and the Governor of the existence of this power and duty appeared in unmistakable terms in 1946. Passed that year (Sen. Pr. No. 521) but not signed by the Governor was a new section of the Code of Criminal Procedure numbered 272-a which would have forbidden a grand jury’s making a ‘ ‘ presentment or other public record censuring or reflecting upon the integrity of any person for alleged misconduct that does not constitute a crime.” Such language would not in itself have completely wiped out the investigative and reportorial duty described in section 253 (which would not have been repealed) but the new section would have forbidden any report which attacked the “ integrity ” of a person on the basis of alleged misconduct not amounting to crime. The bill was passed but vetoed by Governor Dewey. His message, like the bill itself, confirmed the grand jury’s power and duty of examining into and issuing reports on charges of wrongdoing by officials. The Governor, who was certainly informed and experienced as to such matters, went much further and stated in • his opinion that: “ The ancient power of grand juries to inquire into the conduct of public offices and to make presentments concerning their findings has been one of the most valued and treasured restraints upon tyranny and corruption in public office.” He called attention to the 1938 constitutional amendment forbidding impairment of the power. The Governor’s message ended with this statement: “ We are dealing here with a power and a right almost as sacred as that of the writ of habeas corpus. It must not be impaired. By the same token it must not be whittled away, bit by bit. The institution of the grand jury is the bulwark of protection for the innocent and the sword of the community against wrongdoers. Its errors can always be corrected. Any weakening of its strength to act would be an irreparable loss to the citizens of a free Republic.”
*159 The bill passed in 1946 was an attempt to keep out of these grand jury reports material reflecting on the integrity of particular officials. Even such a limitation was, in the Governor’s opinion, a dangerous and undesirable 'weakening of powers essential in a democratic state. Yet the courts are now wiping out the power itself.
I agree with Judge Fuld that cases in other jurisdictions are of little aid in deciding this lawsuit, since we are dealing with New York history and traditions and with our own Constitution and statutes. The Jones case (101 App. Div. 55, supra) decided in 1905 was until this present litigation the only appellate decision on the question in this State. With one Justice dissenting, the court in Jones disposed of all the objections then made and now made to the issuance of these grand jury reports about public officers. A number of modern decisions (Healy, 161 Misc. 582; “ Doe ”, 176 Misc. 943; Lundy, 208 Misc. 833; Quinn, 5 Misc 2d 466) are in accord with Jones. We are cited to a considerable number of lower court holdings said to be to the contrary. With deference I say that when stripped of dicta and view of individual Judges as to proprieties, etc., none of the cases cited by Judge Fuld are in point. For instance, the TV case (19 Misc 2d 682) and Matter of Grand Jury Assn. v. Schweitzer (11 A D 2d 761) both refer to the same grand jury report which did not deal with public officers or public business at all. The Clay case (7 Misc 2d 84) disapproved of a report which differed with judicial officers on a point of law as to the conduct of grand jury proceedings. Osborne (68 Misc. 597) is similar to Clay. The McCabe decision (148 Misc. 330) was on a motion to change the venue of a criminal cause. Crosby (126 Misc. 250) held that the power exists but was improperly exercised. In Funston (133 Misc. 620) the report was improper because it charged a crime which should have been made the subject matter of an indictment. Matter of Gardiner (31 Misc. 364, supra) is strong basis for reversal here. The Gardiner case, decided in 1900, is the one nearest in time to the passage in 1881 of the law which is now section 253. The Gardiner opinion did not deny the power. It expunged a report because it was not founded on legal evidence (see Code Crim. Pro., § 249) and because it was made on the advice of a clergyman who was not a member of the jury. So the supposed weight of authority dwin *160 dies to nothing and the real precedents are in the hundreds of such reports which have been received, filed and made public.
Little time need be spent on the argument that ‘ ‘ wilful and corrupt misconduct ’ ’ means conduct which is criminal and so is adequately covered by the inquiry and indictment authorizations of section 245. It is not the function of a court to destroy a statute by giving it an absurd meaning or by accusing the Legislature of doing a vain or unnecessary thing. “ Wilful and corrupt misconduct ” should be construed, as most New York courts have construed the phrase, to have the same meaning as “ wilful misconduct in office of public officers ’ ’ in the State Constitution (art. I, § 6)—that is, mismanagement or wrongdoing not amounting to crime. A similar answer is available to the argument that section 253 authorizes an investigation but not a report. Such a futility is not to be ascribed to the Legislature. Section 253 covers investigations not only into official misconduct but also into the cases of persons held in jail and the condition and management of prisons. In each such instance, investigation without report would be nonsensical. Indeed, the very report we are considering had a section describing the conditions of some windows in the Schenectady County Jail. That part of the report was received by the court and the rest of the report was suppressed, yet the grand jury’s duty to “ inquire ” is the same as to each of the subdivisions of section 253.
The question here is one of positive law, of Constitution and statute as explained by history and tradition. The grounds stated for curtailing the anciently assumed and modernly authorized power are grounds which no court may consider as against the prohibition of. the Constitution and the command of the statute. It is unfair, we are told, to allow the grand jury to make public an accusation without giving the accused the right to meet it. The first answer is that Judges sit not to enforce their subjective notions of fairness but to apply the law. The second answer is that this is a duty of scrutinizing not private persons but public officials, not private affairs but public business. Unfairness, if any, must be tolerated or at most kept in check. Charges of misconduct in public office are continually and freely made in newspapers and other media. The Legislature has set up various bodies which make it a practice to spread such charges before the citizens (e.g., State Commission of Investigation, L. 1958, ch. 989, § 2; New York City Commissioner *161 of Investigation, New York City Charter, §§ 801-805). All this (see Chief Justice Vanderbilt’s great opinion in the Camden County case, 10 N. J. 23, 40, 44 et seq.) is an occupational hazard of the uneasy trade of public service, part of the price which office holding exacts and part of the protection of the public weal in a free society. No court has the right to cut down that protection. And nothing is more hostile to the central spirit of American political philosophy than to allow any public officer to suppress and bury a relevant, nonscandalous commentary on public affairs by an authorized body of citizens.
The order should be reversed and the prayer of the petition granted.