Froessel, J. (dissenting).
The crucial question in this ease is whether a lawfully constituted grand jury, after it has made an investigation and taken extensive evidence over a period of months with respect to charges of misconduct in a public office, has the right to file with the court a report or presentment embodying its findings and conclusions, and whether such report if filed may be suppressed by the court.
The Justice presiding over the Grand Jury Term received its report, but suppressed the same (with the exception of a paragraph dealing with window sashes and frames in the county jail) upon the ground (1) “ there is no statutory authority for the same ”, and (2) “ the Grand Jury went beyond its functions in making this report ” (22 Misc 2d 958, 960). The Appellate Division, in the course of its memorandum decision stated: ‘ ‘ In any event we think the Justice * * * must have discretion * * * in determining what is useful and what might be harmful ” (11 A D 2d 893, 894).
A majority of this court deny the right of the grand jury to make reports under any circumstances whatsoever, requiring it either to return an indictment, or, should it be unable, by reason of lack of corroboration, of unco-operative or evasive witnesses, or for other legal reasons, to find an indictment against a particular individual, it must “remain silent ”, no matter what conditions contrary to the public interest may have been developed by the evidence before it. "We do not agree. We are, however, in accord with the majority that petitioner does not lack standing to bring this proceeding.
*162 The problem before us has been the subject of much scholarly research by courts and commentators alike (see, e.g., Matter of Jones v. People, 101 App. Div. 55 [2d Dept.], appeal dsmd. 181 N. Y. 389; Matter of Grand Jury [T. V. Quiz Program], 19 Misc 2d 682, related case Matter of Grand Jury Assn. v. Schweitzer, 11 A D 2d 761; In re Camden County Grand Jury, 10 N. J. 23; In Re Report of Grand Jury, 152 Md. 616; The Grand Jury “ Presentment Foul Blow or Fair Play?, by Bichard H. Kuh, 55 Col. L. Rev. 1103; Dession and Cohen, The Inquisitorial Function of G-rand Juries, 41 Yale L. J. 687; Konowitz, The Grand Jury as an Investigating Body of Public Officials, 10 St. John’s L. Rev. 219; 37 Minn. L. Rev. 586; 52 Mich. L. Rev. 711; 29 Fordham L. Rev. 152). Despite the conflicting views, the submission of grand jury reports in this State has nevertheless continued since Colonial times.
For the resolution of the problem before us it is necessary to review this practice in its early settings. At common law, grand juries freely exercised the power to make presentments or reports, and the power has been exercised for well over three centuries. They' investigated and reported on public matters, encompassing such subjects as misconduct in public office, abusive market practices, excessive increase of horse races, cockfighting, the maintenance of bridges and highways and public property (10 Holdsworth, History of English Law [1938] 146-149; see, also, cases and commentators previously cited).
As early as 1684, the Earl of Macclesfield sued a member of a grand jury in an action of Scandalum Magnatum (libel), because that grand jury had charged him—though not in an indictment—with disloyal and seditious conduct. Plaintiff argued that the grand jury may only charge specific crimes ‘1 in such a manner as that the party accused may have recourse to that court to defend himself, by examination and trial any other practice would “ cross all the administration of justice which provides means and remedies as well to acquit the innocent as to punish the guilty ”. The defense maintained that “ it is the constant universal practice ” of grand juries to present any matters concerning the business of the county in “ every assizes and sessions ”. The Barons of the Court of Exchequer who heard the cause rendered a unanimous judgment for the defense (10 How. St. Tr. 1330,1346,1356).
*163 This well-established practice regarding grand jury presentments with respect to matters of public concern was introduced in this country by our early colonists. Groebel and Naught on, in •their “Law Enforcement in Colonial New York” (1944), at page 361 et seq., report many instances of such presentments as early as 1688, as, e.g., against persons “who ride over com fields ’ ’; that persons selling spirits must keep lodgings for horse and man (Minutes of Albany County Court of Sessions [1685-1689]); with regard to repairing highways in Kings and Ulster Counties as well as instances in other counties of the State. (See, also, Matter of Quinn, 5 Misc 2d 466, 469.) Chief Justice Vanderbilt reports of the practice in New Jersey in In re Camden County Grand Jury (supra, at pp. 41-44).
This practice continued in New York as part of our common law down to the time of the adoption of our first Constitution in 1777, and indeed to the present day. In that Constitution it was provided (art. XXXV) that “ such parts of the comm on law of England * * * and of the acts of the legislature of the colony of New York, as together did form the law of the said colony on [April 19,1775], shall be and continue the law of this State, subject to such alterations and provisions as the legislature of this State shall, from time to time, make concerning the same ”. That provision has remained in our Constitution to the present time (art. I, § 14). Thus the grand jury’s power at common law to file reports is not a “mooted question ”, nor may we “ rightfully neglect the common law ”, as the majority would have us do.
Inasmuch as the Legislature has not changed the common-law right of grand juries to make presentments, how can we say they are now unauthorized? Looking to the decisions of other States will not help us, for they are governed by their own laws. Nor will it serve any useful purpose to review the conflicting decisions of our courts of first instance, many of which do not deal with the precise problem before us, as Chief Judge Desmond clearly points out.
It is true that the grand jury in this State derives its powers from our Constitution (including the common law incorporated therein) and our statutes and, in the absence of a clear constitutional or legislative expression, they may not be curtailed (People v. Stern, 3 N Y 2d 658, 661). In our first Constitution no reference was made to the grand jury, and it thus continued *164 as at common, law. In subsequent Constitutions the grand jury is recognized, but its power to make presentments for the information of the public has never been abrogated—either by Constitution or by statute — and so it remains to this day.
Notwithstanding the fact that the right of a grand jury to make presentments has over the centuries been bitterly assailed by some, and strongly defended by others, of which the members of the New York State Constitutional Convention of 1938 were fully aware — even noting the only appellate decision in this State, and which upheld the right (Matter of Jones v. People, 101 App. Div. 55)—they took no action to impair that right (1938 Constitutional Convention, Problems Relating to Judicial Administration and Organization, Yol. IX, pp. 860-865). Indeed, without disturbing any existing right of the grand jury, they in their proposed amendment guaranteed that the following rights may never be disturbed by law: “ The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, shall never be suspended or impaired by law ” (art. I, § 6). As Delegate Halpebn, who prepared the amendment, said, “ this provision does not guarantee the right to make presentments” (emphasis supplied) (Revised Record of N. Y. State Constitutional Convention [1938], Vol. Ill, p. 2573), thus clearly recognizing that the right existed, but leaving to the Legislature the power to divest grand juries of that right.
There can be no question that the Legislature continued this common-law power in section 253 of the Code of Criminal Procedure which provides:
‘ ‘ The grand jury must inquire, * * *
‘ ‘ 2. Into the wilful and corrupt misconduct in office, of public officers of every description, in the county ” (emphasis supplied) for, as was stated in the plainest language by the Commissioners on Practice and Pleadings in 1849 in their report to the Legislature, this provision, then subdivision 3 of section 264, and drafted by them, was merely “ declaratory of the existing powers of the grand jury ” (Proposed Code Grim. Pro. [1850], p. 131; emphasis supplied).
It is significant that this express power is in addition to the general power and “duty, to inquire into all crimes [as distinguished from misconduct] committed or triable in the county ’ ’ *165 (emphasis supplied) (Code Grim. Pro., § 245), and of course a finding that a crime has been committed imposes upon the grand jury the duty to indict the one found to be the offender. Article 170 (§§ 1820-1877) of the Penal Law makes criminal various defined acts committed by a public officer. Therefore, section 253 would be meaningless unless it served some purpose other than section 245, and it seems to us that purpose is to continue to authorize the grand jury to investigate such matters and render a report for the information of the public embodying its conclusions after such an inquiry, as it has for centuries.
In Matter of Jones v. People (101 App. Div. 55, appeal dsmd. 181 N. Y. 389), decided in 1905, the only appellate authority in New York bearing directly on the question before us, a majority of the court affirmed the denial of a motion to set aside and quash a report censuring the Nassau County Board of Supervisors and two of its clerks for failure to properly perform their duties. After noting the power of inquiry conferred by section 260 (now § 253), the court stated (101 App. Div., at p. 57): “We may assume that these powers are conferred for some purpose. Official inquiry intends either official action or official report. As such powers are limited to inquiry, and the grand jury has no executive or administrative authority in the premises, the result of any inquiry must be report or statement which shall call attention to the wrong.”
The majority noted that public officials were involved, and of course they are in a different situation from private individuals. They are servants of the public, and are subject to public criticism. Indeed, our Constitution recognizes the difference in the provision requiring public officials to waive immunity when called before grand juries under penalty of loss of their offices for refusal so to do (art I, § 6).
Moreover, the Legislature has indicated its belief that the grand jury possesses this reportorial power by passage, in 1946, of a bill which would expressly deny to a grand jury the power to make a “ presentment or other public record censuring or reflecting upon the integrity of any person for alleged misconduct that does not constitute a crime ” (see Matter of Lundy, 208 Misc. 833, 841). It was thus exercising a power which Delegate Halpbrit in the 1938 Constitutional Convention recognized as within its province. Vetoing this bill, Governor Dewey in a vigorous memorandum stated: “ The ancient power of grand *166 juries to inquire into the conduct of public offices and to make presentments concerning their findings has been one of the most valued and treasured restraints upon tyranny and corruption in public office.”
Thus it is clear that the common-law right of a grand jury to submit a report for public information, on matters of public concern, imported into our Constitution, has never been abrogated by law. On the contrary, section 253 confirms that right.
The Justice at Trial Term was, therefore, in error when he suppressed the report upon the ground that there is no statutory authority, and that the grand jury went beyond its functions in “ making ” the report. He had no difficulty in disclosing the one paragraph in the report (with respect to a nonmandatory duty [§ 253, subd. (3)]) dealing with the county jail, notwithstanding the fact that this may well reflect upon the jail authorities or the public officials who make appropriations therefor. Why apply that standard to them, and refuse to apply the same standard to another agency of government (with respect to a mandatory duty imposed on the grand jury [§ 253, subd. (2)])? The mere fact that a governmental department may be criticized in a grand jury report where misconduct is found but cannot be pinpointed criminally to a specific individual is no ground for its suppression. Public officers, whether Presidents, Governors, Judges or other servants of the State, are not immunized from criticism, and it would be a sorry day for this country if they were.
We are mindful of the fact that as to policy vigorous arguments have been made on both sides. There are those who bitterly assail the practice, as did Mr. Ward in the Earl of Macclesfield case (supra) in 1684.. There are others who hail it, as did Chief Justice Vaudebbilt, as serving “ a need that is not met by any other procedure. * * * No community desires to live a hairbreadth above the criminal level, which might well be the case if there were no official organ of public protest. Such presentments are a great deterrent to official wrongdoing” (In re Camden County Grand Jury, supra, at p. 66).
Nor are we unmindful of the fact that there may be some erring or misguided grand juries, but their reports may be treated as hereinafter indicated. These instances are uncommon, however, for, as the majority concede, they are “ a judi *167 cial body occupying a position of respect and importance in the community”. The same concern was expressed in the Fourth Report of the Commission on the Code of Criminal Procedure (1849) with respect to indictments wrongfully obtained, and which placed a defendant’s liberty in danger (pp. xxxiv et seq.); nevertheless we retain the indictment procedure. They recognized, however, that the grand jury system was “ introduced among us in the same spirit in which it took its rise in the mother country ”, and that it 44 may be justly regarded, not merely as a safeguard to private right, but as an indispensable auxiliary to public justice (Proposed Code Crim. Pro. [1850], supra, p. 116.)
The public, too, has rights. The grand jury is chosen from among them; they pay the expenses of grand jury investigations and, when dealing with matters of public concern, they are at least entitled to know the results of such investigations. Of course, the problem involves an accommodation of interests and, when we weigh them in the balance and find the practice here complained of has continued for so many years, we have no right to strike it down—that must be done by the people themselves directly, or through their duly elected representatives in the Legislature.
This is not to say, however, that any document submitted to a court by a grand jury must be filed as a public record. A grand jury is formed according to law (Code Crim. Pro., pt. IV, tit. IV, ch. II). They are required to take an oath to " diligently inquire and true presentment make, of all such matters and things as shall be given you in charge ’ ’; they " shall present no person from envy, hatred or malice ”; and " shall present all things truly as they come to your knowledge ” (Code Crim. Pro., §§ 239, 238). They are required to " receive none but legal evidence ”. If, therefore, upon presentation of a report the court find that it is based on evidence before them; that it deals with misconduct in public office; is not based on malice or otherwise violative of the grand jury oath; that no unwarranted accusations are made against an individual and it is not scandalous, it must permit the report to be filed as a public record.
The determination of the Trial Justice is, however, reviewable. However well intentioned he may be, he may err. He cannot be the sole arbiter of "what is useful and what might be *168 harmful ’ as the Appellate Division put it. Such power should never be given to a single individual, without his action being subject to review. Inasmuch as the Trial Justice has the power in the first instance to reject the proffered report as unacceptable for filing as a public record for any of the above reasons, and this determination is subject to judicial review, the argument of the majority that the report constitutes both the ‘ ‘ first and last step of the judicial process ” is not persuasive.
Accordingly, the order appealed from should be reversed, and the matter remitted to Trial Term for further proceedings not inconsistent with this opinion.
Judges Dye, Van Voorhis and Foster concur with Judge Fuld; Chief Judge Desmond and Judge Froessel dissent in separate opinions; Judge Burke concurring in both.
Order affirmed.