(101 App. Div. 55.)

### In re JONES et al., Board of Sup'rs.

### In re MEEHAN, Clerk of Board of Sup'rs.

(Supreme Court, Appellate Division, Second Department. January 27, 1905.)

GRAND JURY—POWERS—PRESENTMENT.

 Code Crim. Proc. § 260, provides that the grand jury must inquire (1) into the case of every person imprisoned in the jail on a criminal charge, and not indicted; (2) into the condition and management of the public prisons in the county; and (3) into the willful and corrupt misconduct in office of public officers. Section 261 gives them free access to public prisons and the examination of public records. While there is no specific provision for a report as the result of an inquiry, section 250, in referring to the preservation of the minutes of the proceedings of the grand jury, uses the term "presentment" in contradistinction to "indictment." *Held*, that the grand jury may, in the exercise of its inquisitorial powers, make a presentment in the nature of a report, although an indictment cannot or does not follow it, and such report need not be stricken out because it incidentally designates some public official as responsible for omissions or commissions.

 [Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Grand Jury, § 88.]

 Woodward, J., dissenting.

Appeal from Special Term, Nassau County.

In the matter of the application of William H. Jones and others, composing the board of supervisors of the county of Nassau, to set aside and quash a presentment made by the grand jury in a proceeding entitled "The matter of the Investigation as to the Records and Minutes of the Clerk of the Board of Supervisors of Nassau County," and in the matter of the application of Edward J. Meehan, clerk of the board of supervisors of the county of Nassau. From an order denying a motion to set aside and quash the presentment, the applicants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Halstead Scudder, for appellants.
James P. Niemann, for respondents.

JENKS, J. If we regard the term "presentment" in its stricter meaning as an accusation of the grand jury sua sponte, or, as Judge Story puts it, "an accusation made ex mero motu," as distinguished from an indictment which was a written accusation preferred to the grand jury and presented upon oath at the instance of the government, then I agree that it is not a final accusation—the alternative, so to speak, of an indictment; for a presentment was regarded as the basis of an indictment. The distinction does not now often practically appear, inasmuch as the grand jury is rarely the origin of accusation, as was its prototype under the Assize of Clarendon (Thayer's Preliminary Treatise on Evidence in Common Law; Green's Short History of the English People, 111; Ency. Brit. "Jury," quoting Stubbs; Bl. Comm. c. 21), though power to act ex mero motu is preserved in section 259 of our Criminal Code of Procedure. But our Code of Criminal Procedure vests the grand

jury with certain inquisitorial or visitorial powers. Section 260 provides as follows:

"The grand jury must inquire (1) into the case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted; (2) into the condition and management of the public prisons in the county; and (3) into the willful and corrupt misconduct in office, of public officers of every description, in the county."

Section 261 provides as follows:

"They are also entitled to free access, at all reasonable times, to the public prisons, and to the examination, without charge, of all public records in the county."

We may assume that these powers are conferred for some purpose. Official inquiry intends either official action or official report. As such powers are limited to inquiry, and the grand jury has no executive or administrative authority in the premises, the result of any inquiry must be report or statement which shall call attention to the wrong. The grand jury can but report to the court to which it was returned, and by which it is discharged. Such reports are commonly termed "presentments." The Standard Dictionary gives this as a definition of presentment:

"4. Law. (1) A report made by a grand jury, on their own motion, either on their own knowledge or on evidence before them, concerning some wrongdoing, and presented to the court, usually as a basis for an indictment. (2) The finding and setting forth of charges in an indictment by a grand jury; an indictment."

Bishop on Criminal Procedure, § 137 (2), says:

"Sometimes our grand juries make a sort of general presentment of evils and evil things to call public attention to them, yet not as instructions for any specific indictment. No one could be called upon to answer to such a presentment."

Hochheimer on the Law of Crime and Criminal Proceedings says:

"Presentment in a large sense of the term includes every proceeding of a grand jury. 2 Inst. 739."

I think, therefore, that any final finding upon the exercise of these inquisitorial powers may be called a presentment, and that it may be regarded as final, and not improper, because an indictment cannot or does not follow it. While it is true that the Code of Criminal Procedure does not in terms provide for a report as the result of this inquiry nor directly provide for a presentment, yet it is significant that the term is used in contradistinction to an indictment in section 250, which reads as follows:

"The grand jury must appoint one of their number as clerk, who is to preserve minutes of their proceedings (except of the votes of the individual members on a presentment or indictment), and of the evidence given before them."

Such inquiry as is required by sections 260 and 261 may reveal misconduct, inattention, or shortcomings of public officials, and the report or presentment might be colorless or ineffective unless it specified individual delinquencies. I think that in such a case

the grand jury can properly point out those individuals who, as officials, are deemed responsible, and that the presentment may stand though it be not followed by an indictment.  It may be per-- tinent to call attention to the fact that inefficiency, carelessness, or neglect may require correction, and yet not justify indictment, and to the fact that not all willful or corrupt misconduct in office can be presented in the first instance by indictment; e. g., unlawfully disclosing the finding of an indictment, unlawfully bringing to or carrying letters from any county jail, penitentiary· or state prison, or selling liquors in a courthouse or jail contrary to law.  See sec- tion 56 Code of Criminal Procedure, and subdivisions 13, 14, and 30 thereof.  It is true that accusation without opportunity to answer in the forum is a bitter hardship, if not intolerable (see opinion of Lord Mansfield in Rex v. Roupell, Cowp. 458) ; but, while a report or presentment of a grand jury neither calls upon a person nor suf- fers him to answer, it may be that the court in its inherent power might, on the application of one aggrieved, refer or resubmit the matter to the further inquiry of the grand jury, or of a grand jury, in order that justice be done after a full hearing.  I think that if under the guise of a presentment, the grand jury simply accuse, thereby compelling the accused to stand mute, where the present- ment would warrant indictment so that the accused might answer, the presentment may be expunged; but I do not think that a pre- sentment as a report upon the exercise of inquisitorial powers must be stricken out if it incidentally point out that this or that public official is responsible for omissions or commissions, negli- gence or defects.

As the position of the appellants is that this presentment is ille- gal and without authority in law, regardless of the merits—which, indeed, are not presented—I feel constrained to affirm the order which deals only with a presentment made in the exercise of inquisitorial powers.

HIRSCHBERG, P. J., and HOOKER, J., concur.  BARTLETT, J., votes to dismiss appeal on the ground of want of jurisdiction to entertain it.

WOODWARD, J. (dissenting).  The grand jury of Nassau county, in December, 1903, made a presentment to the Supreme Court, in which the board of supervisors and two men who had acted as clerks of the board were censured for not performing the duties of their respective offices in a manner to meet the approval of the grand jury.  The individuals thus censured, with no opportu- nity offered them to be heard in their own defense, petitioned the County Court of Nassau County, asking that the presentment be set aside and quashed on the ground that such presentment was without authority of law.  The prayer of the petitioners was de- nied, and the petitioners appeal to this court.

An exhaustive research on the part of the learned counsel for the appellants, supplemented by the labors of counsel for the respond¹ ents, fails to bring to this court any controlling authority upon the question presented by this record, which involves the legal right of the grand jury to bring in a presentment against individuals

where the evidence adduced does not disclose that any crime has been committed. In other words, we are asked to determine whether the grand jury, acting under the laws of this state, is authorized to make a public record (section 272, Code Cr. Proc.) censuring individuals for alleged misconduct, where the conduct alleged does not constitute a crime; whether the state of New York has established an inquisition in which the conduct of citizens may be reviewed and officially criticised and censured, according to the standards of ethics or morals of such board, rather than by those standards which have been fixed and determined by the law of the land. The rule is supported by high authority that the validity of a statute is not to be determined by what has been done in any particular instance, but by what may be done under it (City of Rochester v. West, 164 N. Y. 510, 514, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659, and authorities there cited), and in determining the powers of the grand jury under the laws of this state, whether regulated by statute or usage constituting the common law, we have a right to consider what that body might do under this indefinite power of making presentments if that power be conceded. If it has the right to censure the petitioners in the matter now before us, it is difficult to conceive of any limitation upon the powers of the grand jury. It may establish its own standards of right and wrong, and may subject the citizen to the odium of a judicial condemnation without giving him the slightest opportunity to be heard; oftentimes working, in the public estimate, as great an injury to his standing and character as though he had in fact been accused of a crime. This is a perversion of the essential spirit of the grand jury system, which had for its object the protection of the citizen against an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial, before a probable cause is established by the presentment and indictment. Jones v. Robbins, 8 Gray, 329, 344. It cannot be that it was ever contemplated that this body, created for the protection of the citizen, was to have the power to set up its own standards of public or private morals, and to arraign citizens at the bar of public opinion, without responsibility for its abuse of that power, and without giving to the citizen the right to a trial upon the accusations.

"The institution of the grand jury," said Mr. Justice Field in his charge to a grand jury (Charge to Grand Jury, 2 Sawyer, 667, Fed. Cas. No. 18,255, cited with approval in Ex parte Bain, 121 U. S. 1, 10, 7 Sup. Ct. 781, 30 L. Ed. 849), "is of very ancient origin in the history of England; it goes back many centuries. For a long period its powers were not clearly defined, and it would seem from the account of commentators on the laws of that country that it was at first a body which not only accused, but which also tried, public offenders." But he adds: "However this may have been in its origin, it was at the time of the settlement of this country an informing and accusing tribunal only, without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial. And in the struggles which at times arose in England between the powers of the King and the rights of the subject it often stood as a barrier against persecution in his name, until at length it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown. In this country, from the popular character of our institutions, there has seldom been any contest between the government

and the citizen which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body * * * shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial."

There are two great purposes—one to bring to trial those who are properly charged with crime, the other to protect the citizen against unfounded accusation of crime. When the grand jury goes beyond this, and attempts to set up its own standards, and to administer punishment in the way of public censure, it is defeating the very purposes it was intended to conserve; and its action cannot, therefore, be lawful. Section 6 of article 1 of the state Constitution provides that "no person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury, and in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions." The inhibition that the citizen shall not be held to answer unless upon a presentment or indictment must be understood as guarantying the right to answer when such a presentment or indictment is found, and "the party accused shall be allowed to appear and defend in person," etc.; while by section 2 of the same article this right is further protected by the provision that "the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever." In other words, a "presentment or indictment," as applied to the citizen by our Constitution, contemplates, in substance, the same thing. It contemplates an accusation of crime, to be followed by an answer on the part of the person thus formally accused, with an opportunity to be heard in his own defense before a jury of his peers. The terms are, in their relation to the individual, synonymous. No one would contend that a citizen could be indicted for anything less than a crime, or that, if indicted, he could be denied an opportunity to answer and to appear in his own defense before a jury; and it seems to me equally clear that there is no constitutional right to make a presentment against an individual in a case where an indictment would not lie. The rights of the citizen are the same under either an indictment or a presentment. There is the right to answer and to appear in person and by counsel, and to have a trial by jury in any case in which an indictment might properly be made. "An indictment is an accusation in writing, presented by a grand jury to a competent court, charging a person with a crime." Code Cr. Proc. § 254. A presentment—for which I find no warrant in the Code of Criminal Procedure—is the notice taken of an offense by the grand jury from its own knowledge or observation, without any bill of indictment laid before it by the prosecuting officer of the government. Upon such presentment, when proper, the officer em-

ployed to prosecute frames a bill of indictment, which is sent to the grand jury, and the latter finds it a true bill.    State v. Cox, 8 Ark. 436, citing 4 Black. Com. 301; Bouv. Law Dic. tit. "Present-ment."    See, also, 5 Bacon's Abridgment, 48 tit. "Indictment."    It has been held that the court might reduce such presentment to the form of an indictment without sending it back to the jury (see Ba-con's Abridgment, supra, and authorities cited), and the chief dis-tinction between an indictment and a presentment at common law was that the former was made at the suggestion of the crown, while the latter was made upon the knowledge of one or more of the jurors, and, instead of being indorsed "A true bill" by the fore-man alone, was signed by all of the jurors.    In re Grosbois, 109 Cal. 448, 42 Pac. 444.    In State v. Security Bank, 2 S. D. 542, 51 N. W. 338, the court say:

"If the grand jury find only that a public offense has been committed, and that there is reasonable ground for believing that a particular individual or a particular corporation has committed it, they should return a present-ment; but if they find, and are willing to specifically charge, that any par-ticular individual or any particular corporation has committed a public of-fense, they should return an indictment."

This idea runs through all of the authorities which I have been able to discover, that the jurisdiction of the grand jury over indi-viduals must depend upon the fact that a crime or offense has been committed against the public.    See Beavers v. Henkel, 194 U. S. 73, 84, 24 Sup. Ct. 605, 48 L. Ed. 882.    An offense is a breach of the laws established for the protection of the public, as distinguished from an infringement of mere private rights; a punishable viola-tion of law; a crime.    21 Am. & Eng. Ency. of Law, 830, 831, and authorities cited in note.    If there has been no crime or offense, the grand jury, designed for the protection of the citizen, has no right to create an offense unknown to the law for the purpose of admin-istering punishment by way of censure, for this is a "government of laws, not of men," to quote the preamble of the Constitution of Massachusetts and the language of Chief Justice Marshall in Mar-bury v. Madison, 1 Cranch, 163, 2 L. Ed. 60.    The rule is not differ-ent because the accusation takes the form of a presentment rather than of an indictment, which, as I have already suggested, are synonymous terms as used in our jurisprudence, and particularly so since the adoption of our Code of Criminal Procedure.    This pro-vides (section 273) that "all the forms of pleading in criminal ac-tions, heretofore existing, are abolished; and hereafter the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code."    Section 274 pro-vides that "the first pleading on the part of the people is the indict-ment"; evidently contemplating that the common-law presentment should be reduced to a formal indictment before it should have a place in the proceedings against the life, liberty, or property of the citizen.    This is made the more manifest by the provisions of section 275, that "the indictment must contain (1) the title of the action, specifying the name of the court to which the indictment is pre-sented, and the names of the parties; (2) a plain and concise state-

ment of the act constituting the crime, without unnecessary repetition." There must be a statement, not of the acts which the grand jury disapproves, but of "the acts constituting the crime." If the acts charged do not constitute a crime, then there is no indictment before the court, and the petitioners clearly have a right to be relieved of the odium of a judicial censure, where the document in which such censure is contained is a mere impertinence, without authority of law. The court had sections 275 and 276 of the Code of Criminal Procedure under consideration in the case of People v. Dumar, 106 N. Y. 502, 13 N. E. 325, and it was held that an indictment must charge both the crime and the act constituting it, and that the omission of either is fatal. In the course of the opinion, written by Danforth, J., it was said:

"If there was no accusation of a crime, the paper, however formal in other respects, would not be an indictment, and so there would be no criminal action. If it contained no statement of the act constituting the crime, there would be no description of the offense, and neither an acquittal nor a conviction would enable the defendant to withstand a further prosecution for the same crime."

See People v. Corbalis, 178 N. Y. 516, 520, 71 N. E. 106, and authorities there cited.

All of the old forms of criminal pleading being abolished, the people being limited to an indictment, which shall charge the commission of a definite crime, and state the acts constituting such crime, and a presentment being the equivalent of an indictment in the common law as it was understood at the time of making our state Constitution, it follows that any other action on the part of a grand jury in dealing with a citizen is without authority in law; and, the petitioners being subjected to a wrong in the form of law, it becomes the duty of this court to deprive this so-called presentment of an official character, and thus to remedy, so far as possible, the wrong which has been done them. The petitioners are not charged with a crime; the facts stated do not constitute a crime; and the paper presented to the court, and which assumes to criticise and censure the board of supervisors and its clerks, is without any authority whatever, and should be quashed and set aside, not alone because of the wrong sought to be perpetrated upon the petitioners, but for the protection of citizens in their right to their good names and reputations against all unauthorized attacks.

The order denying the petitioners' prayer should be reversed, and the so-called presentment should be set aside and quashed, with costs to the appellants.