Fuld, J.
Although long the subject of controversy in our lower courts, this is the first time that we have had the occasion to consider whether a grand jury, whose investigation into charges of misconduct on the part of public officials uncovered no evidence warranting an indictment, may, nevertheless, present to the court for filing as a public record a report which censures and castigates their conduct in office.
The case before us arises out of an inquiry by a Schenectady County Grand Jury into charges leveled against the County Highway Department. The investigation yielded no evidence *148 of corruption or other criminality and, accordingly, as the grand jury itself recognized, there was no basis for any indictments. Despite this, the grand jury prepared, and sought to have filed and made public as a “ court record,” a 19-page report, most of which is devoted to criticism of the practices of the Highway Department as ‘ ‘ contrary to the general interests of the public ”.[1] Although it does not expressly name the individuals involved, the report leaves little doubt as to the identity of the persons responsible for the claimed derelictions. The court “ received ” the document, but, except for one paragraph dealing with conditions of' windows in the county jail, ordered it “ sealed ”, to be opened only upon court order.
Thereupon, the foreman of the grand jury, asserting that the report deals with 1 ‘ matters of great public concern and interest” and pertains to “the proper * * * administration of government and the conduct of public officials ”, instituted this article 78 proceeding to compel the Supreme Court Justice who had presided over the term for which the jury had been drawn to file it as a public record. The Appellate Division dismissed the petition. The only prior appellate court decision is to the contrary (Matter of Jones v. People, 101 App. Div. 55, appeal dsmd. 181 N. Y. 389) and opinion at the trial court level has been divided.[2] We granted leave to appeal because of the importance of the question in the administration of justice.
*149 We pass over quickly the respondent’s contention that the petitioner lacks standing to bring this proceeding. He sues both as foreman of the grand jury and individually and, whether or not he may sue in his individual capacity, it is clear that he does have status to sue as foreman of the grand jury responsible for the report. The circumstance that the term of that grand jury had expired did not preclude him from instituting the present proceeding, particularly in view of its great public importance. (See, e.g., Matter of Plumbing Assn. v. New York State Thruway Auth., 5 N Y 2d 420, 422, n. 1; Matter of United Press Assns. v. Valente, 308 N. Y. 71, 76; Matter of Adirondack League Club v. Black Riv. Regulating Dist., 301 N. Y. 219, 222.)
Turning to the merits, we note, first, that in this State the grand jury derives its powers solely from Constitution and statute (N. Y. Const., art. I, § 6; Code Grim. Pro., pt. IV, tit. IV, ch. H, §§ 223-260; see People v. Stern, 3 N Y 2d 658, 661). While the Constitution does provide that the common law is continued as the law of New York, it explicitly declares that it is only continued “ subject to such alterations as the legislature shall make concerning the same ” (N. Y. Const., art. I, § 14; see, also, N. Y. Const, of 1777, art. XXXV). And the detail and comprehensiveness of the legislation enacted to regulate the duties, powers and functions of the grand jury (Code Grim. Pro., §§ 223-260) leave no doubt that the Legislature manifested its intention to supplant the common law on the subject. In fact, the Commissioners on Practice and Pleadings, who in 1849 *150 recommended the prototype of the present statute (see Report to N. Y. State Legislature of Commissioners on Practice and Pleadings on Code of Criminal Procedure [1849], pp. 115-129), regarded the then existing common-law powers of the grand jury as ‘ ‘ vague and unlimited ’ ’ and proposed the new provisions for the very purpose of supplying ‘ ‘ a clear and well understood definition of [the grand jury’s] powers” (p. 115). It is, accordingly, pointless to prohe the uncertain state of the common law as to the grand jury’s powers.[3] If there is authorization for a grand jury report, it must be found in either Constitution or statute.
The only constitutional provision on the subject was first adopted by the 1938 Constitutional Convention and added to the Constitution the following year. Contained in article I, section 6, it reads as follows: ‘ ‘ The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, shall never be suspended or impaired by law ”. As the discussion preceding adoption of the amendment discloses (see Revised Record of Constitutional Convention of 1938, Vol. 3, pp. 2570-2573), it had nothing whatsoever to do with the grand jury’s power to make or file a report. On the contrary, after noting that there “ is very grave doubt ” whether that body has “ any such power * * * at all ”, its proponent, the Honorable Philip Halpebh, stated that he drafted the provision “ very carefully to avoid the question” (p. 2573). Actually, as Delegate Halpbrh explained to the Convention (p. 2571), the proposal was advanced solely for the purpose of making certain that the Legislature of this State would never be able to do what the Legislature and Governor of Pennsylvania had attempted, namely, take from the grand jury its authority to investigate and indict for alleged criminal acts by public officials. (See, also, Dauphin County Grand Jury Investi *151 gation Proceedings [No. 2], 332 Pa. 342, 346 et seq.; Note, 52 Harv. L. Bev. 151.)
These clear expressions of the purpose thus sought to be accomplished by the quoted provision of section 6 of article I find precise embodiment in its language. Not only does it avoid any intimation of a grand jury power to make or publish a report, but, in so many words, it inseparably links the grand jury’s power “ to inquire into the wilful misconduct of public officers ’ ’ with its power ‘1 to find indictments * * * in connection with such inquiries ”. Here, rather than constitutional recognition of a power to report, is explicit constitutional guarantee of a power in the grand jury to inquire and indict.
Nor does any provision of statute suggest that the grand jury has the power to make a report directed at supposed mismanagement by public officials. Section 223 of the Code of Criminal Procedure defines a grand jury as “ a body of persons * * # sworn to inquire [into] crimes committed or triable in the county.” Section 245 declares that the grand jury has the “ power ”, indeed, the “ duty, to inquire into all crimes committed or triable in the county, and to present them to the court. ’ ’ And section 253 requires and authorizes the grand jury to “ inquire ” (1) into “ the case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted ”; (2) into “ the wilful and corrupt misconduct in office, of public officers of every description, in the county and (3) into “ the condition and management of the public prisons in the county.” The plain and simple fact is that, although the Legislature has, in 40 separate sections of the Code of Criminal Procedure, dealt in most comprehensive and detailed fashion with the grand jury, its powers and functions (§§ 223-260), it nowhere mentions reports, much less authorizes their filing or publication.
It is urged, however, that a power “ to inquire ” necessarily implies a power to report the result of the inquiry and that, therefore, the power given the grand jury by section 253 to inquire into “ wilful and corrupt misconduct ” of public officials authorizes the publication of the report here in question. The argument is not persuasive.
The key words are not the words “ to inquire ” but, rather, “wilful and corrupt misconduct”. Every action by a grand jury presupposes an inquiry; the subject matter of the inquiry *152 must be found in other words. Here, the jury did inquire and, by its own admission, failed to find that there was ‘£ wilful and corrupt misconduct ”. Where, then, is the authority for it to publish, under the immunity which attaches to grand jury actions, any more than the statement that no evidence of such misconduct was found!
Indeed, if the argument advanced—that the power to report is implicit in the power to inquire— had merit, it would mean that the grand jury would likewise be entitled, by virtue of section 245 of the Code which requires it to “inquire into all crimes ”, to make and publish a report in any and every case whether touching on the conduct of public officers or the behavior of private citizens. Such a consequence, involving the possibility of the publication of an untold number of reports concerning every variety and aspect of private life, could hardly have been intended by the limited legislative grant. Even if the language were less clear than it is, we would hestitate to conclude that the 1849 draftsmen of the Criminal Code, who believed that the preservation of the grand jury’s usefulness “ depends upon a clear and well understood definition of its powers ” (Report to N. Y. State Legislature of Commissioners on Practice and Pleadings on Code of Criminal Procedure [1849], p. 115, supra), intended to confer such an important and controversial power as that here asserted by surmise and implication.
The natural interpretation of section 253, subdivision 2, links it appropriately to the definition of the grand jury as a “body * * * sworn to inquire [into] crimes ” (Code Crim. Pro., § 223). The. Legislature has spelled out in great detail the particular acts of commission and omission on the part of public officials which are made criminal (Penal Law, art. 170, entitled “ Public Office and Officers ”, §§ 1820-1878). And the legislative mandate to grand juries to “ inquire ” into “ the wilful and corrupt misconduct * * * of public officers ” (Code Crim. Pro., § 253, subd. 2) necessarily has reference to those acts on the part of public officials which are declared to be crimes under the Penal Law; the concept of willful and corrupt official misconduct which does not amount to crime is self-contradictory and meaningless. As a former judge of this court wrote many years ago (Medalie, Grand Jury Investigations, The Panel, Vol. 7, No. 1, p. 5):
*153 “ The statute [present § 253] is silent as to what the grand jury is required to do after * * * an inquiry. In the case of willful and corrupt misconduct of public officers, it is quite clear that there is no form of corrupt misconduct in office which is not the subject of indictment. Therefore, in that instance at least, there being no other enlargement of powers to the grand jury, their function is limited to the finding of an indictment.”
Thus, there is simply no basis in the statute for assuming that the Legislature intended to invest the grand jury with the power to condemn public officers according to its own standards of right and wrong, as distinguished from those clearly expressed in penal statutes, in other words, to accuse officials in a court record of conduct which the Legislature has not chosen to denominate as criminal or unlawful. To hold that subdivision 2 of section 253 authorizes reports such as that here in issue, we would have to equate ‘ ‘ wilful and corrupt misconduct ’ ’ with ‘1 inefficiency ’ ’ or “ mismanagement ” or the like (see Matter of Jones v. People, 101 App. Div. 55, 57-58, supra)—a construction which does violence to words whose meaning is deeply imbedded in our jurisprudence.
In view of the general power conferred by section 245 of the Code to inquire into all crime, it may not, strictly speaking, have been essential to provide, in section 253, for inquiry into willful and corrupt misconduct in public office. It does not follow, however, that the power of inquiry conferred by the latter section was designed to render the grand jury a board of censors of public officials. Bather, its purpose was to make clear to public officials and public prosecutors, as well as to the grand jury itself, that the cloak and prerogative of public office were not to operate as a shield against the grand jury’s duty to inquire into charges of crime, including willful and corrupt misconduct in office.
A reasoned analysis of the relevant provisions of our Constitution and Code of Criminal Procedure leads ineluctably to the conclusion that the grand jury inquiry authorized by section 253, subdivision 2, as well as by section 245, must result in either an indictment (§ 268) or a dismissal of the charge (§ 269) and that the grand jury may not, under cover of the power to inquire, employ a report to accuse an individual of *154 misconduct or laxity in public office any more than it may do so to charge him with misbehavior in private life. The grand jury’s historic function, as embodied in our statute, is to determine whether there is evidence establishing the commission of crime. If there is such evidence, the grand jury ought to find an indictment. If, however, there is no such evidence, it must-dismiss the charges or remain silent. “ There are two great purposes ” to be served by the grand jury, Judge Woodward wrote in his masterly dissent in Matter of Jones (101 App. Div., at p. 61), “ one to bring to trial those who are properly charged with crime, the other to protect the citizen against unfounded accusation of crime. When the grand jury goes beyond this and attempts to set up its own standards, and to administer punishment in the way of public censure, it is defeating the very purposes it was intended to conserve, and its action cannot, therefore, be lawful.”
In the public mind, accusation by report is indistinguishable from accusation by indictment and subjects those against whom it is directed to the same public condemnation and opprobrium as if they had been indicted. An indictment charges a violation of a known and certain public law and is but the first step in a long process in which the accused may seek vindication through exercise of the right to a public trial, to a jury, to counsel, to confrontation of witnesses against him and, if convicted, to an appeal. A report, on the contrary, based as it is upon the grand jury’s own criteria of public or private morals, charges the violation of subjective and unexpressed standards of morality and is the first and last step of the judicial process. It is at once an accusation and a final condemnation, and, emanating from a judicial body occupying a position of respect and importance in the community, its potential for harm is incalculable. A grand jury report—which as a judicial document obviously differs radically from newspaper charges of misconduct — carries the same sense of authoritative condemnation as an indictment does, without, however, according the accused the benefit of the protections accorded to one who is indicted.
It is quite true, as urged upon us, that over the years numerous lower court judges have accepted reports for filing, but this does not supply the answer to the question whether the grand jury possesses the right or power to make reports. In many instances, the reports contained nothing which could have occasioned harm *155 or prejudice to anyone and no one, therefore, felt called upon to oppose their being filed. These reports, it is plain, were tolerated, not sanctioned. (See, e.g., Matter of Osborne, 68 Misc. 597, 603-604, supra; Matter of Gardiner, 31 Mise. 364, 367, supra.)[4] In any event, though, the exercise of a nonexistent right or power gains no sanction by repetition, especially when such exercise has gone unchallenged. However, as noted above (pp. 148,149, n. 2), where the subject has been considered, most courts, both in this State and in other jurisdictions, find the grand jury report legally unauthorized and morally obnoxious.
We, of course, require free and open discussion of public affairs and of public office, but the right of free speech has nothing to do with the question whether the Legislature has vested in the grand jury the right to file a report of official misconduct or laxity in cases where there is no evidence of crime warranting indictment. As is manifest, there may be full discussion of performance in public office without running the risk—which would attend the publication of such reports — of converting the grand jury into a body of political supervisors and of appearing to put the court, of which the grand jury is an arm, into politics as well.
Grand jurors are not selected for their skill in appraising efficiency in public office or delving into matters more appropriately reserved for executive or legislative action. (See Matter of United Elec., Radio & Mach. Worhers, 111 F. Supp. 858, 864-865, supra.) Moreover, the secrecy which necessarily surrounds the action of the grand jury prevents fruitful debate as to the merit of its charges, and the immunity which surrounds its members removes the normal restraint against recklessness. Under these circumstances, there is grave danger that grand jury reports may as readily be used as instruments of unfair partisan politics as of public enlightenment.
It is indisputable that public officers be held to a high standard of performance. It is also indisputable that free and *156 open criticism of the conduct of public office is part of the very lifeblood of our democracy. But these propositions are as irrelevant to the issue before us as they are unassailable. What is at issue here is not the integrity of a public official or his performance in office, but rather the process or procedure to be employed in charging and judging him. To be deplored, and avoided in the absence of a clear grant of legislative authority, is not public criticism of officials, but criticism contained in a court report which, while it carries, at least, the aura of a judicial pronouncement, denies to the persons involved any of those safeguards designed to protect against the violation of cherished individual rights.
The Appellate Division order should be affirmed.

. A grand jury report, although frequently referred to as a presentment, is essentially different. (See Dession and Cohen, The Inquisitorial Functions of Grand Juries, 41 Yale L. J. 687, 705-706.) A presentment — rarely used in this day — and an indictment are accusations of crime, the difference between them being that the former is made at the instance of the grand jury itself, while the latter is made at the instance of the public prosecutor. (See Hale v. Henkel, 201 U. S. 43, 60; Goebel and Naught on, Law Enforcement in Colonial New York [1944], pp. 351-355.) A report, on the other hand, is not intended to serve as a basis for prosecution. It is not a criminal accusation, grounded on legally sufficient evidence of the violation of a criminal statute, to which answer may be made in court; it is rather a moral condemnation or exhortation without any forum being provided for explanation or defense.

. A number of trial court judges, have followed the Jones decision (see Matter of Quinn, 5 Misc 2d 466; Matter of Lundy, 208 Misc. 833; People v. “John Doe”, 176 Misc. 943; Matter of Healy, 161 Misc. 582), but most of the lower courts which have written on the subject have espoused the contrary view. (See, e.g., Matter of Grand Jury [T. V. Quiz Program], 19 Misc 2d 682, 685-688 [per Schweitzer, J.], related case, Matter of Grand Jury Assn. *149 v. Schweitzer, 11 A D 2d 761 [art. 78 proceeding]; Matter of Clay v. Wickens, 7 Misc 2d 84, 87-89; People v. McCabe, 148 Misc. 330; Matter of Funston, 133 Misc. 620; Matter of Crosby, 126 Misc. 250; Matter of Osborne, 68 Misc. 597; Matter of Gardiner, 31 Misc. 364. See, also, Federal Rules of Criminal Procedure, with Notes and Institute Proceedings [1946], pp. 250-251, per Crane, Ch. J.; Medalie, Grand Jury Investigations, The Panel, Vol. 7, No. 1, p. 5.)
Most of the courts of the other jurisdictions which have considered the matter find the grand jury report both legally unauthorized and morally obnoxious. (See, e.g., Ex parte Robinson, 231 Ala. 503; Coons v. State, 191 Ind. 580; In Re Report of Grand Jury, 152 Md. 616; Bennett v. Stockwell, 197 Mich. 50; Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200; State ex rel. Strong v. District Court, 216 Minn. 345; State V. Bramlett, 166 S. C. 323; Matter of Report of Grand Jury, 123 Utah 458; Matter of Report of Grand Jury, 204 Wis. 409; Matter of United Elec., Radio & Mach. Workers, 111 F. Supp. 858. See, contra, In Re: Report of Grand Jury, 152 Fla. 154; In re Camden County Grand Jury, 10 N. J. 23.)

. Whether the grand jury had the power at common law to file a report is a much mooted question. (See In Re Report of Grand Jury, 152 Md. 616, 619-623; In re Camden County Grand Jury, 10 N. J. 23, 34-64; Matter of Grand Jury [T. V. Quiz Program], 19 Misc 2d 682, 684, supra; see, also, Dession and Cohen, The Inquisitorial Functions of Grand Juries, 41 Yale L. J. 687; Kuh, The Grand Jury “Presentment”: Foul Blow or Fair Play?, 55 Col. L. Rev. 1103; Note, 38 Col. L. Rev. 1493; Note, 44 Corn. L. Q. 257; Note, 74 Harv. L. Rev. 590.)

. In this connection, the court in the Osborne ease (68 Misc. 597, supra,) aptly observed (pp. 693-604): “ It has become a custom of almost invariable occurrence that the grand jury, at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be remedied. So long as they are confined to matters of general interest they are regarded as harmless, even though a waste of time and effort, and after the ephemeral notice of the day has passed they are allowed a peaceful rest.”