In the Matter of INTERIM REPORT OF the GRAND JURY convened FOR the MARCH TERM OF the SEVENTH JUDICIAL CIRCUIT OF MISSOURI 1976.

Appeal of Ed STEIN, Movant.

No. 59578.

Supreme Court of Missouri, En Banc.

July 11, 1977.

Rehearing Denied July 11, 1977.

Roger Guy Burnett, Liberty, for appellant.

Thomas E. Allen, Asst. Pros. Atty., Liberty, for respondent.

HENLEY, Judge.

This is an appeal by Ed Stein (movant) [1] from an order of the Circuit Court of Clay county overruling his motion to expunge from the court's records an interim report [2] filed by its grand jury convened for the March Term, 1976. The order overruling movant's motion is a final judgment from which an appeal will lie. *State ex rel. Lashly v. Wurdeman,* Judge, 187 S.W. 257, 248 (Mo.banc 1916). Appellate jurisdiction is in this court, because the case involves construction of the constitution of Missouri. Article V, § 3, Constitution of Missouri.[3]

The issue presented is whether a grand jury, after investigating the conduct of a named public officer, may report its findings based thereon other than by indictment.

Movant contends that the court erred in overruling his motion, because the grand jury did not have authority under either the constitution or the statutes to "report" the results of this investigation; that it had the authority to report by way of indictment, but no authority to report short of charging him by indictment with commission of a criminal offense. He points to Article I, § 16, the only provision in the constitution regarding the powers of grand juries,[4] and

---

1. Movant is the planning director and zoning enforcement officer of the Clay County Planning and Zoning Commission.

2. The report, in pertinent part, is as follows:
   "The investigation revealed that Mr. Stein became aware of the mishandling of funds [in the petty cash account of the Clay County Planning and Zoning Office] and after becoming aware did not take any appropriate action to protect these funds, either through releasing the employee involved or by taking effective action to prevent said employee from having the opportunity to mishandle the funds."

3. References to the constitution are to the 1945 Constitution of Missouri, as amended, unless otherwise indicated.

4. Article I, § 16, is as follows:
   "That a grand jury shall consist of twelve citizens, any nine of whom concurring may find an indictment or a true bill: provided, that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies; but when so assembled such grand jury shall have the power to investigate and return indictments for all character and grades of crime; and that *the power of grand juries to inquire into the willful misconduct in office of public officers, and to find indictments in connection therewith, shall never be suspended.*" (emphasis added).

says that that section, unlike § 11 of Article XIV of the prior constitution,[5] does not require or empower a grand jury to "report" to the court the results of its investigation into the conduct of public officers. He also points to § 540.020,[6] the only section of the statutes which authorizes a grand jury to file a "report," and calls attention to the fact that it specifically limits that authority to a report on the condition of public buildings.[7]

In summary, movant's position is that, in circumstances such as those presented in this case, a grand jury should either indict or be quiet; that public policy and concepts of fair play require that it do one or the other, because a person accused by indictment is afforded an opportunity to refute the charge by answer and to present his defense at a trial, but where the accusation is by report he is denied that opportunity.

The grand jury (as respondent), through its counsel, contends that there is authority at common law and in the constitution and statutes for it to make the type of report filed in this case; that the authority to investigate implies the power to file for record a report which accuses but does not indict.

In approaching the issue presented we bear in mind two historical functions of a grand jury under the common law of England adopted by what is now § 1.010. One was to accuse and thereby bring to trial those believed to have violated the law. The other, equally important but often overlooked, was to protect the citizen against unfounded accusation of crime. *Conway v. Quinn*, 168 S.W.2d 445, 446[1] (Mo.App.1942). In *State ex rel. Lashly v. Wurdeman*, supra, 187 S.W. at 259, this court, speaking of grand juries, said: "That body is a component part of the court, existed at common law, and is recognized in the Constitution, where some of its duties are specified. Its creation and duties are provided for by statutes. The grand jury is a great inquisitorial body, originally designed to vindicate the law and to protect the body of the people from the encroachments of arbitrary power. It is a necessary adjunct of all courts charged with the enforcement of the criminal law." See also *State ex rel. Hall v. Burney*, 229 Mo.App. 759, 84 S.W.2d 659, 664[5] (1935).

There is a division of opinion as to whether at common law a grand jury had the power to file a report (as distinguished from an indictment) censuring an individual, some cases and articles on the subject taking the view that the grand jury did not have such power[8] and others that it did.[9]

5. Article XIV, § 11, constitution of 1875, is as follows:

"It shall be the duty of the grand jury in each county, at least once a year, to investigate the official acts of all officers having charge of public funds, *and report* the result of their investigation in writing to the court." (emphasis added).

6. References to sections of statutes are to RSMo 1969.

Subsection 1 of § 540.020 provides, in part, that a " * * * grand jury shall have the power to investigate and return indictments for all grades of crimes * * *."

7. Subsection 2 of § 540.020 is as follows: "A grand jury shall be convened at the discretion of a judge of the court having the power to try and determine felonies, to examine public buildings, and report on their conditions; to inquire into violations of the game and fish law, the election laws, the various liquor laws, and such other violations as the court may direct. The grand jury shall make careful inquiry into the failure or refusal of county and municipal officers to do their duty, as provided by law, and the court shall charge each grand jury to make inquiry into any violations by county officers of laws relating to the finances or financial administration of the county."

8. See: 30 University of Kansas City Law Review 200 (1962–63), "Inquiry Into The Power Of A Missouri Grand Jury," by the Honorable John W. Oliver, Judge, United States District Court for the Western District of Missouri, and cases referred to therein. See also: *Application of United Electrical, Radio & Machine Workers of America*, 111 F.Supp. 858, 863 [footnote 12] and 866 [footnote 26] (S.D.N.Y. 1953).

9. See: 1962 Washington University Law Quarterly, pp. 191–207, "Grand Jury Reports—A Safeguard of Democracy," by Noah Weinstein, Judge, Circuit Court of St. Louis county, and William J. Shaw, First Assistant Prosecuting Attorney, St. Louis county; and, 55 Columbia Law Review 1103 (1955), "The Grand Jury

We will assume, for the purposes of this case, that at common law a grand jury had the duty and the authority to report the results of its investigation of the official acts of officers having charge of public funds. We know it had that duty and authority under the 1875 constitution. Article XIV, § 11, supra, of that constitution clearly so provided.[10] Hence, if our assumption is accurate, it may be said that this provision of the 1875 constitution was consistent with the common law.

However, that provision in the 1875 constitution is not to be found in the present constitution. And, while the common law was adopted by § 1.010, it is clear from chapter 540, particularly § 540.020 thereof specifying in detail the duties and powers of the grand jury, that the general assembly intended that the common law applicable to grand juries be superseded by these statutes. The power of a grand jury to "investigate * * * all character and grades of crimes" and "to inquire into the willful misconduct in office of public officers" is limited by § 540.020 and Article I, § 16, to finding or returning indictments. Now, as in the 1875 constitution, a grand jury may inquire into the misconduct of public officers, but the authority to report thereon explicit in the 1875 constitution is conspicuous by its absence.

The italicized portion of Article I, § 16, supra, appears for the first time in the 1945 constitution and is almost identical to Article I, § 6, of the New York constitution adopted in 1938.[11] The court of appeals of

that state had occasion to interpret § 6 in *Wood v. Hughes*, 9 N.Y.2d 144, 212 N.Y.S.2d 33, 173 N.E.2d 21 (1961) which involved the same issue presented in this case. The court held that the "grand jury had no authority to make a report concerning alleged mismanagement of public office where investigation into charges of misconduct on part of public officials uncovered no evidence warranting an indictment." The court stated that it had been explained at the Constitutional Convention that the purpose of the quoted provision of the constitution[11] was to make certain that the "legislature * * * would never be able to * * * take from the grand jury its authority to investigate and indict for alleged criminal acts by public officials," as had been attempted in a neighboring state.[12] Discussing this purpose in connection with the question of whether § 6 had anything to do with a grand jury's power to make and file a report, the court said: "Not only does it avoid any intimation of a grand jury power to make or publish a report, but, in so many words, it inseparably links the grand jury's power 'to inquire into the wilful misconduct of public officers' with its power 'to find indictments * * * *in connection with such inquiries.'* Here, rather than constitutional recognition of a power to report, is explicit constitutional guarantee of a power in the grand jury to inquire and indict." 212 N.Y.S.2d at 37, 173 N.E.2d at 24. It is quite clear that the purpose of the italicized portion of § 16 of Article I was to insure that the power of a grand jury to investigate and indict public officials for criminal acts in office could not

---

'Presentment': Foul Blow or Fair Play," by Richard H. Kuh, Assistant District Attorney, New York county, and cases referred to in these law review articles.

**10.** We note in this connection that this part of the 1875 constitution is the only source relied upon in *State ex rel. Lashly v. Wurdeman*, supra, as supporting the statement that a grand jury had the power to report the result of its investigation of public officers; no reference is made to the common law as supporting the statement. 187 S.W. at 259.

**11.** Article I, § 6, Constitution of New York, is as follows:

"The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, shall never be suspended or impaired by law."

**12.** Essentially the same explanation was made by a delegate to our 1943–1944 Constitutional Convention in connection with the proposal for

be suspended; that it had nothing whatsoever to do with a power to report short of indictment.

The argument that the power given by the constitution and chapter 540 to investigate implies the power to report is not persuasive. Subsection 1 of § 540.020, implementing the constitutional provision, expressly gives the grand jury "power to investigate and return indictments for all grades of crimes." The power to report is not mentioned. Instead, under this subsection, investigation contemplates and authorizes only the return of an indictment. Subsection 2 lists several specific areas for grand jury inquiry and investigation. The first area mentioned explicitly directs that the grand jury "examine public buildings, *and report on* their conditions" (emphasis added), but *reporting* power is not expressed in connection with the other specific areas or in connection with the general areas of law violations which the trial court may direct the grand jury to investigate. Had authority to report the results of the grand jury's inquiry or investigation in these other areas been intended, it would have been a simple matter to so provide. There is simply no basis in the statute for assuming that the legislature intended to empower a grand jury to report the result of its investigation where that result disclosed that there was not sufficient grounds for indictment.

The report filed in this case should be expunged from the record because it is not authorized by law, and because it is a quasi-official accusation of misconduct which movant is precluded from answering in an authoritative forum.

The judgment based on the order overruling movant's motion is reversed and the case is remanded with directions that the grand jury's report be expunged from the court's files and records.

All concur.

adoption of the italicized language in what became § 16 of Article I of the 1945 constitution: "It is only when they are investigating officials that are in power that you are liable to have some official try to pass a law to abolish a grand jury system or to curb their rights of investigation and my thought in this proposition was to fix the Constitution so that no corrupt legislature or governmental power could curb the right of a grand jury to investigate." See: Debates of the Missouri Constitutional Convention, April 18, 19, 1944, at pp. 1143–1157; 1962 Washington University Law Quarterly at pp. 196–198.