Irving Nemerov, Minneapolis, for appellant.

John Samples and John Gordan, Minneapolis, amicus.

Warren Spannaus, Atty. Gen., St. Paul, for respondent.

**In re GRAND JURY OF HENNEPIN COUNTY IMPANELED ON NOVEMBER 24, 1975.**

No. 47452.

Supreme Court of Minnesota.

Oct. 13, 1978.

SHERAN, Chief Justice.

Petitioners seek a writ of prohibition restraining the Honorable Donald T. Barbeau, Chief Judge of the Hennepin County District Court, from releasing a copy of a report of the Special Hennepin County Grand Jury dated October 14, 1976, in which the grand jury refers to the improper use of office by "elected state officials." We have determined that a report such as this which severely criticizes individuals who, while not

specified by name, are nonetheless readily identifiable from the context of the report, is governed by our recent holding in *In re Grand Jury of Wabasha County,* 309 Minn. 148, 244 N.W.2d 253 (1976). The writ of prohibition is therefore granted.

The Special Hennepin County Grand Jury was impaneled on November 24, 1975, to examine allegations concerning improper conduct by county officials,[1] but, on the basis of newly discovered evidence, Judge Barbeau directed it to complete an investigation begun by a prior grand jury concerning the River Villa Nursing Home. On October 14, 1976, the grand jury issued a report on this second investigation,[2] the rationale for which is presented in its introduction:

> " * * * [D]uring the course of this investigation, we received evidence of conduct which was so disturbing and important for the public to know that we were compelled to make this Report [which] is issued in the discharge of our statutory duty to 'inquire * * * [i]nto the wilful and corrupt misconduct in office of all public officers in the county.' [Minn.St. § 628.61, subd. 3.]

> " * * * [H]aving been fully advised of the Supreme Court's opinion concerning grand jury reports, *In Re Grand Jury of Wabasha County,* [309 Minn. 148, 244 N.W.2d 253 (1976)], we have not singled out particular individuals for criticism nor published informal and haphazard charges. Rather, we have necessarily confined ourselves to reporting on conditions which came to our attention during sworn testimony."

On October 14, 1976, petitioner appeared informally before this court seeking to suppress the grand jury report. We so ordered, until the district court could hear, in camera, motions to suppress and this court could review Judge Barbeau's decision. After conducting an in camera hearing on this issue on November 15, 1976, Judge Barbeau held that since the report referred merely to unidentified state public officials, it was distinguishable from *In re Grand Jury of Wabasha County, supra,* and should be released. On January 10, 1977, petitioners sought a writ of prohibition from this court, and on January 19, 1977, we stayed all proceedings in the district court and declared all records and files unavailable to the public pending disposition of the petition.

Just 2 years ago, in *In re Grand Jury of Wabasha County, supra,* we examined the question of whether a grand jury could issue a written report filed with the district court and addressed to the governor that contained findings and opinions concerning the subject of its investigation. In *Wabasha County* a named county official had been accused of criminal misconduct. Although the grand jury returned no indictment against him, he was discussed by name in its report. On these facts we held that the report, issued without an indictment, was "an unnecessary and unwarranted extension of the authority of the grand jury in contravention of [Rule 18, Rules of Criminal Procedure]." 309 Minn. 151, 244 N.W.2d 255.

This holding governs the report under consideration here. Although the grand jury attempted to avoid *Wabasha County* by not specifying by name the public officials it criticized, such a distinction is merely technical when those individuals could be promptly identified by the public from the context of the report and the description of their activities. The conclusion that this is a report concerning identifiable persons is not an obvious one and is based on all the circumstances surrounding this case. A report by a prior grand jury using specific names has already been made public. Also, the investigation conducted by this grand

---

1. The grand jury's original charge was to examine allegations concerning the construction of the Hennepin County Government Center and the Hennepin County Medical Center as well as the legality of certain expense reimbursements to Hennepin County officials.

2. On the same date it also issued a report on the disputed audits of the two county facilities which was released for public dissemination without objection.

jury and the possible contents of its report have been the subject of considerable media speculation. While it is the judiciary and not the media which must decide whether or not this report engages in the impermissible singling out of individuals, these stories must be given consideration. They indicate that the general outlines of the investigation are common knowledge and signify to us that reputations will be injured by the release of this report even if the resulting conjecture about the identity of those involved is inaccurate. Our conclusion that just because it uses no names a report is not necessarily rendered harmless and legitimate was also reached by the New York Court of Appeals in *Matter of Wood v. Hughes,* 9 N.Y.2d 144, 148, 212 N.Y.S.2d 33, 34, 173 N.E.2d 21, 22 (1961):

" * * * [T]he grand jury prepared, and sought to have filed and made public as a 'court record,' a 19-page report, most of which is devoted to criticism of the practices of the Highway Department as 'contrary to the general interests of the public.' Although it does not expressly name the individuals involved, the report leaves little doubt as to the identity of the persons responsible for the claimed derelictions."

Because its subjects are identifiable, this report creates the same danger which we sought to avoid in *Wabasha County*—the infliction of great damage to the reputations of individuals who are granted no appropriate forum in which to clear themselves. The judicial imprimatur under which a grand jury operates gives to its pronouncements a ring of proven truth which they may not deserve. A formal indictment, supported by probable cause, is followed by a public trial during which a whole range of constitutional provisions insure a fair hearing for the accused. An informal report, on the other hand, drafted after a secret investigation and based on an uncertain standard of proof, may be remembered long after equally informal denials or objections forthcoming from its targets are forgotten. And the report's readers may understandably but incorrectly assume that at least the rudiments of due process—notice and opportunity to be heard—were afforded the accused. As Judge Woodward of New York wrote in his eloquent dissent in *Jones v. People,* 101 App.Div. 55, 61, 92 N.Y.S. 275, 279 (1905), a dissent which has long been cited approvingly by the courts of New York:

" * * * There are two great purposes [to be served by the grand jury]— one to bring to trial those who are properly charged with crime, the other to protect the citizen against unfounded accusation of crime. When the grand jury goes beyond this, and attempts to set up its own standards, and to administer punishment in the way of public censure, it is defeating the very purposes it was intended to conserve; and its action cannot, therefore, be lawful."

There is a distinction between this report and the one considered in *Wabasha County* that may be as significant as its restraint from using names. This distinction also separates this case from *Wood v. Hughes, supra,* and makes the question of releasing this report a particularly close one. The grand jurors here have not set up their own standards. They have neither made accusations of criminal activity, which should be pronounced only if probable cause exists for a formal indictment, nor offered their own inexpert and unsolicited opinions on the quality or efficiency of government administration. Rather, they have, with a minimum of value judgments of their own, simply reported well documented activities of state officials which constitute relatively clear cut violations of civil statutes. Thus, there is no danger in this case of some individuals suffering criticism because others happen to dislike their conduct. They are criticized because the legislature itself has disapproved of their conduct. Thus, this report is more fair than many others which have been of concern to the courts. Nor is there danger here of the greater notoriety that comes from accusations that criminal rather than civil law has been violated.

Nevertheless, we must hold that *Wabasha County* governs this case because of the

procedural deficiencies we have noted. Even if the standard of conduct is clear and the charges are not criminal, unfair injury to reputation will result from accusations made without notice or opportunity to respond, and the grand jury is nowhere authorized to administer such punishment.[3]

In determining that this report may not be released, we are holding, as did *Wabasha County*, that such a report is beyond the authority granted the grand jury by Rule 18, Rules of Criminal Procedure, which "deals comprehensively with the subject of grand jury proceedings." 309 Minn. 149, 244 N.W.2d 254. The focus of a grand jury's responsibility is found in Rule 18.06, subd. 2:

"The grand jury may find an indictment when upon all of the evidence there is probable cause to believe that an offense has been committed and that the defendant committed it. \* \* \*."

The only alternative is found in Rule 18.07:

"An indictment may be found only upon the concurrence of 12 or more jurors. When so found, it shall be signed by the foreman, whether he be one of the 12 concurring or not, and delivered to a judge in open court. If 12 jurors shall not concur in finding an indictment, the foreman shall so report in writing to the court forthwith, and any charges filed against the defendant for the offenses considered and upon which no indictment was returned shall be dismissed. The failure to find an indictment or the dismissal of the charge shall not prevent the case from again being submitted to a grand jury as often as the court shall direct."

The authority relied upon by the grand jury for its issuance of this report, Minn.St. 628.61, subd. 3, which directs the grand jury to inquire into the willful and corrupt misconduct of public officers, is to be interpreted in light of these relevant portions of Rule 18.[4] As to whether Rule 18 authorizes a grand jury to issue a report on general conditions that have been brought to its attention but does not single out individuals for criticism, we here, as in *Wabasha County*, offer no opinion.

Our discussion of these issues cannot end at this point, however, for we appreciate the potential benefits to be gained from the honest inquiry of conscientious grand jurors into the conduct of public officials and the public discussion that would result from the publication of their findings. Robust and open debate is a linchpin of a free society, and the suppression of information can never be undertaken lightly—indeed, only when the equally important principle of fairness to the individual is also at stake. We see the possibility of a reconciliation of these competing values in the case of grand jury reports. A procedure may be devised

3. Respondent contends that because public officials both have voluntarily placed themselves in a position where they must expect the kind of criticism involved here and have access to the media to respond, they do not have the same right to privacy as does a private person. This status has been recognized by the United States Supreme Court in cases such as *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and *Gertz v. Welch,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). As correct as this observation may be, it is irrelevant to the issue here. Regardless of the status of public officials, they are still susceptible to some injury from unfair criticism, and it is our holding today that the creation of such injury is beyond the authority of a grand jury.

4. We note respondent's appropriate contention that Minn.St. 628.61 was not one of the statutes expressly modified by Rule 18. The statute grants authority to conduct certain inquiries, and respondent is correct that the rule does not change this. But the statute does not take the next step and authorize a report based on any inquiry; the grand jury's actions after an inquiry is made are governed by the rule. This interpretation does not render § 628.61(3) superfluous; the grand jury is to investigate misconduct to ascertain if any crimes have been committed. The statute thus sanctions an important function that may otherwise have been challenged as unauthorized—since "misconduct" may on the surface involve no crime, the grand jury is going beyond its usual scope of investigating criminal activity. See, Note, *The Grand Jury—Its Investigatory Powers and Limitations,* 37 Minn.Law Rev. 586, 587. This is especially important in that the grand jury is controlled by the governmental establishment of the county which may have a vested interest in seeking to limit its inquiry into such matters.

which allows the release of the much needed information contained in grand jury reports and at the same time protects the individuals involved from unjust accusation. To this end, we refer our legislators to the experience of the State of New York. The long antipathy of the courts of New York toward grand jury reports culminated in *Matter of Wood v. Hughes,* 9 N.Y.2d 144, 212 N.Y.S.2d 33, 173 N.E.2d 21 (1961), where the court held that without a clear legislative grant of authority a grand jury had no power to issue reports critical of public officials but not alleging the commission of a crime. Governor Rockefeller introduced legislation designed to provide this authority, along with appropriate safeguards to prevent the possible injustice that

had been of concern to the courts. The result was a statutory scheme specifically permitting reports of official misconduct but which may be released only if supported by credible evidence, if the public official under criticism has been allowed to testify before the grand jury, and if the official has had an opportunity to prepare an answer to be appended to the report itself.[5] Such a scheme has been approved by the New York courts and we urge our legislature to adopt a similar version. Until such action is taken, however, we are able to do nothing other than carry out our responsibility to protect individual rights and reputations by restricting the release of unauthorized reports such as this.

The writ of prohibition is granted.

5. The New York statute is now N.Y.Crim. Proc.Law (McKinney) § 190.85.

"1. The grand jury may submit to the court by which it was impaneled, a report:

(a) Concerning misconduct, non-feasance or neglect in public office by a public servant as the basis for a recommendation of removal or disciplinary action; or

(b) Stating that after investigation of a public servant it finds no misconduct, non-feasance or neglect in office by him provided that such public servant has requested the submission of such report; or

(c) Proposing recommendations for legislative, executive or administrative action in the public interest based upon stated findings.

"2. The court to which such report is submitted shall examine it and the minutes of the grand jury and, except as otherwise provided in subdivision four, shall make an order accepting and filing such report as a public record only if the court is satisfied that it complies with the provisions of subdivision one and that:

(a) The report is based upon facts revealed in the course of an investigation authorized by section 190.55 and is supported by the preponderance of the credible and legally admissible evidence; and

(b) When the report is submitted pursuant to paragraph (a) of subdivision one, that each person named therein was afforded an opportunity to testify before the grand jury prior to the filing of such report, and when the report is submitted pursuant to paragraph (b) or (c) of subdivision one, it is not critical of an identified or identifiable person.

"3. The order accepting a report pursuant to paragraph (a) of subdivision one, and the report itself, must be sealed by the court and may not be filed as a public record, or be subject to subpoena or otherwise be made public until at least thirty-one days after a copy of the order and the report are served upon each

public servant named therein, or if an appeal is taken pursuant to section 190.90, until the affirmance of the order accepting the report, or until reversal of the order sealing the report, or until dismissal of the appeal of the named public servant by the appellate division, whichever occurs later. Such public servant may file with the clerk of the court an answer to such report, not later than twenty days after service of the order and report upon him. Such an answer shall plainly and concisely state the facts and law constituting the defense of the public servant to the charges in said report, and, except for those parts of the answer which the court may determine to be scandalously or prejudicially and unnecessarily inserted therein, shall become an appendix to the report. Upon the expiration of the time set forth in this subdivision, the district attorney shall deliver a true copy of such report, and the appendix if any, for appropriate action, to each public servant or body having removal or disciplinary authority over each public servant named therein.

"4. Upon the submission of a report pursuant to subdivision one, if the court finds that the filing of such report as a public record, may prejudice fair consideration of a pending criminal matter, it must order such report sealed and such report may not be subject to subpoena or public inspection during the pendency of such criminal matter, except upon order of the court.

"5. Whenever the court to which a report is submitted pursuant to paragraph (a) of subdivision one is not satisfied that the report complies with the provisions of subdivision two, it may direct that additional testimony be taken before the same grand jury, or it must make an order sealing such report, and the report may not be filed as a public record, or be subject to subpoena or otherwise be made public."